(88 N. W. Rep. 97.)

---

STATE *ex rel* IDA KOL *vs.* THE NORTH DAKOTA CHILDREN'S HOME SOCIETY.

Opinion filed Dec. 19, 1901.

**Statute—Subject Expressed in Title.**

Chapter 87 of the Laws of 1897, entitled "An act relating to societies organized for the purpose of securing homes for orphans, or abandoned, neglected or grossly illtreated children, by adoption or otherwise, and providing rules for the regulation of the same," does not violate § 61 of the state constitution, which requires that "no bill shall embrace more than one subject which shall be expressed in its title. * * *" It is *held* that said act embraces but one subject, namely, the securing of homes for children of the classes named, and such subject is expressed in the title of the act.

**Constitutional Law—Probate Courts—Jurisdiction.**

Neither does said act conflict with § 111 of the state constitution, which, among other things, confers upon county courts exclusive original jurisdiction in probate matters, the appointment of guardians, and settlement of their accounts, etc. The duties placed upon county courts by said act are not in violation of, but in aid of, their constitutional jurisdiction over guardians. A children's home society to whose custody children have been committed by a county court, occupies the legal relation of a substitute or temporary guardian to such children; and, as such temporary or substitute guardian, its acts

are subject to the approval or disapproval of the court making the appointment, and. such appointment may be revoked as in other guardianships.

### Judges—Judicial Duties.

It is also *held* that said act does not impose nonjudicial duties upon the judges of the supreme court, in violation of § 96 of the state constitution.

### Habeas Corpus—Guardian of Children—Home Society.

The county court of Griggs county, after a judicial investigation upon notice, determined( that the petitioner for a writ of habeas corpus herein, to recover the custody of her three minor children, was leading a lewd and immoral life, and that by reason thereof she was an unfit person to continue as the natural guardian of said children, and ordered them placed in the custody of the North Dakota Children's Home Society, located at Fargo. It is *held* that said court had jurisdiction to make such order, and that the same is not void. The present custody of said children is therefore legally in the respondent, and the writ prayed for must be denied.

Habeas corpus by Ida Kol against the North Dakota Children's Home Society to recover possession of applicant's minor children. Writ denied.

*Taylor Crum,* for petitioner.

*Pollock & Scott,* for respondent.

YOUNG, J. A petition has been filed in this court by Ida Kol asking that a writ of habeas corpus issue, directed to the North Dakota Children's Home Society, of Fargo, and its agent, B. H. Brasted, commanding them to produce the bodies of her three minor children, John Kol, Harold Kol, and Herman Kol, and to return the cause of their detention, to the end that they may be restored to their liberty and to the custody and control of the petitioner. The petition is based upon the affidavit of the petitioner and Taylor Crum, her attorney. A similar application was made on October 14, 1901, to the Honorable Charles A. Pollock, judge of the Third judicial district, wherein said children are now detained and upon such application the writ was issued. That court, however, after a hearing upon the merits, denied the petitioner's request to restore to her the custody of said children. Preliminary to the application which is now made to this court, counsel for the petitioner and the respondent have stipulated that the writ shall not issue in the first instance, and that the application to this court shall be heard and determined upon the merits as they shall appear from the petition presented to the lower court, and the return of the respondent thereto.

It appears from the affidavit filed in support of the petition that the petitioner is a married woman, and that her husband, Charles Kol, is now living, but that she lives separate and apart from him; that John Kol, Harold Kol, and Herman Kol are the children of the petitioner and her said husband; that said children are of the ages of 11, 9, and 7 years respectively; that for several years last past the

petitioner has resided with her said children in the village of Cooperstown, in Griggs county; that her said husband has been absent from Griggs county for three years; that in the month of August, 1901, the children were taken from her custody, without her consent and against her wish and placed in the care and custody of the respondent, as she claims, without warrant or authority of law. The respondent made return to the writ that they had said children in custody at the home of said society in the city of Fargo, and that such custody was under and by virtue of a certain decree or process issued by the county judge of Griggs county; that the said North Dakota Children's Home Society is a corporation organized and existing under and by virtue of chapter 87 of the Laws of 1897, and the amendments thereto; that B. H. Brasted is the duly elected, qualified, and acting superintendent of said society. Copies of the proceedings had in the county court of Griggs county are contained in the return to said writ.. These records disclose the following facts: On August 24, 1901, a written petition was presented to the county court of said county, signed by the three trustees of the village of Cooperstown, setting forth that this petitioner was unfit to have the charge and custody of said children because of her immoral and lewd life, and praying that the care and custody of said children be given to the North Dakota Children's Home Society, of Fargo. Upon the filing of said petition a citation issued out of said court, directed to this petitioner and her husband, requiring them to show cause on the 27th day of August, 1901, at 10 o'clock a. m., why said children should not be taken from the said petitioner's possession and provided for under the statute. The sheriff's return shows that the citation was served upon the petitioner on the 24th day of August, 1901, and that her husband could not be found within the county. On August 29, 1901, the county court cited nine witnesses to appear on August 30th to testify in said proceeding. The sheriff's return shows that eight of these witnesses were served. On August 30, 1901, said court rendered its judgment and order upon said petition as follows: "The petition of the trustees of the village of Cooperstown, in the county of Griggs and state of North Dakota, asking that the above named children be taken from the custody of Ida Cole and placed in charge of the North Dakota Children's Home Society, for the reason that said Ida Cole is an unfit person to have the care and custody of said children, having come on to be heard after due notice to said Ida Cole, the state's attorney, Benjamin Tufte, appearing for said petitioners, and Ida Cole appearing in person, and after hearing all the evidence produced by both parties, and after duly considering the same, the court now finds as a fact: That said minor children were born in the United States, and are of German descent, and are of the ages as follows, to-wit: John Cole, eleven years old; Herole Cole, nine years old; Herman Cole, seven years old. That the father, Charles Cole, has been for three years last past absent from the county

and has done nothing for the support of said children; that the mother, Ida Cole, by reason of her violent temper, immoral habits, language, and associations, is an unfit and improper person to have the care and custody of said minor children. Thereupon, on motion of Benjamin Tufte, of counsel for said petitioners, it is hereby ordered, adjudged, and decreed that the said minor children, John Cole, Herole Cole and Herman Cole be and they are hereby, ordered to be delivered to the North Dakota Children's Home Society, or its agent, and to be thereafter subject to the rules and regulations of said society; and, in case of the refusal of said Ida Cole to deliver up said minor children, the sheriff of the county of Griggs is hereby ordered to take possession of said minor children and deliver the same to the said North Dakota Children's Home Society, or its duly authorized agent."

The respondent claims no further right to the custody of the children than is given by the order of the county court of Griggs county, above set out. It is therefore apparent that the question as to which of the contending parties is entitled to the custody of these children depends entirely upon the validity of the order of the county court of Griggs county. If the order of that court placing said children in the custody of the respondent is valid, then its possession is rightful. But if, on the other hand, the order is invalid, then the right of the petitioner, as the natural guardian of her children, to have their possession and control, has not been cut off, and she is entitled to their custody. Counsel for the petitioner contends that the order of the county court of Griggs county was made without authority of law and without jurisdiction. It is urged that the entire act which authorizes county courts to place children of the classes to which these children belong, in societies, is an unconstitutional and void enactment. The right of the present custody of these children depends upon a solution of this question. The order was made under chapter 87 of the Laws of 1897, now known as § § 3199a-3199f of the Revised Codes of 1899. It is urged that the act violates § 61 of the state constitution, which provides that "no bill shall embrace more than one subject, which shall be expressed in its title." As we understand counsel, his position is that the act embraces more than one subject, and that neither of the subjects embraced in the act is expressed in the title. We are of opinion that the act in question is not vulnerable to the objections urged. The title of the act is as follows: "An act relating to societies organized for the purpose of securing homes for orphans or abandoned, neglected or grossly illtreated children, by adoption or otherwise, and providing rules for the regulation of the same." The act consists of six sections, and the provisions of each of said sections relate to and are in furtherance of the object or purpose of the act, which is to provide homes for the classes of children described in the title. The purpose of the legislation is commendable, for it is recognized in all civilized countries that it is not only the right, but also the

duty, of the state to interfere in particular cases for the protection of infants, and to exercise its supreme prerogative jurisdiction over their persons for their benefit. Section 1 of the act clothes corporations which have been or shall be organized under the laws of this state for the purpose of securing homes for children of the classes mentioned in the title, by adoption or otherwise into private families, with authority to receive the same for such purposes. This was necessary and in furtherance of the purpose of the act, for at common law such corporations were without the power to act for such purposes, and it is only by virtue of the statute that they can do so. Further, it is patent that the humane end of the law can be accomplished only through the aid of such benevolent associations, inasmuch as the infants whom it seeks to aid are without means of support. Section 2 defines the powers and duties of such societies in reference to children so received. Section 3 limits the expense which such societies may charge to persons in whose home the children may have been placed. Section 4 requires a careful supervision of all the children placed in homes. Sections 5 and 6 make it the duty of county judges, upon complaint of two officers of a county, city, village, or township, to investigate the facts in reference to children which are alleged to have been neglected, abandoned, etc., and to enter findings in reference thereto, and, if it shall be determined that such children belong to the classes enumerated, he shall enter an order directing that they be turned over to one of these societies for the purpose of adoption into private families, or otherwise as to such society shall be deemed best. The said sections also provide for the service of a citation upon the parents, if they can be found; for the attendance of the state's attorney of the county; for the attendance and examination of witnesses, and directions to the sheriff. All of these several provisions relate to and are directly in furtherance of, a common and single purpose, namely, the procuring of homes for children of the classes named. That is all that is necessary. The constitution only requires that the act shall contain a single subject or object of legislation, and that such subject or object shall be expressed in the title. It is not intended, neither is it required, that the separate means or instrumentalities necessary to accomplish the object of legislation shall be embodied in separate acts. "Such a requirement would be absurd, rendering legislative acts fragmentary, and they would often fail of their intended effect, from the inherent difficulty of expressing the legislative will when restricted to such narrow bounds." The section of the constitution under consideration is found in the constitution of a majority of the states, and it is universally held, and we think necessarily, that an act which has but a single purpose, and that purpose is expressed in its title, may embrace all matters which are naturally and reasonably included in it, and all measures which will or may facilitate the accomplishment of the purpose of the legislation. Such has been the uniform in-

terpretation given by this court. *State* v. *Woodmansee*, 1 N. D. 246;
46 N. W. Rep. 970, 11 L. R. A. 420; *State* v. *Haas*, 2 N. D. 202, 50
N. W. Rep. 254; *State* v. *Nomland*, 3 N. D. 427, 57 N. W. Rep. 85,
44 Am. St. Rep. 572; *Richard* v. *Stark Co.*, 8 N. D. 392, 79 N. W.
Rep. 863; *Power* v. *Kitching*, 10 N. D. 254, 86 N. W. Rep. 737; *Divet*
v. *Richland Co.*, 8 N. D. 65, 76 N. W. Rep. 993; *Paine* v. *Dickey Co.*,
8 N. D. 581, 80 N. W. Rep. 770. This court in *State* v. *Woodmansee*,
supra, in speaking of the rule of interpretation to be applied to this
section, said: "Similar constitutional provisions may be found in
most, if not all, of the states, some of the states using the word 'ob-
ject,' instead of 'subject,' as it appears in our constitution. This
provision is intended to forestall what Judge Cooley denominates
'logrolling' legislation, and prevent legislation not fully understood
by members of the legislature, as well as to prevent all surprises or
misapprehensions on the part of the public. But it has been uni-
formly held that such provisions should receive a reasonable, and not
a technical, construction, and that no matter should be held to in-
validate a statute so long as such matter related exclusively to the
same subject, or was germane or auxilliary thereto." *State* v. *Mor-
gan*, 2 S. D. 32, 48 N. W. Rep. 314; *Supervisors* v. *Heenan*, 2 Minn.
330 (Gil. 281); *State* v. *County Judge of Davis Co.*, 2 Iowa 280.

Having reached the conclusion that the provisions of the act are
congruous and relate to a common subject, we will now inquire
whether that subject is expressed in the title. We are agreed that
it is. Mr. Justice Harlan, in construing a similar provision found
in the constitution of the state of New Jersey, in *Montclair Tp.* v.
*Ramsdell*, 107 U. S. 147, 2 Sup. Ct. 391 27 L. Ed. 431, said: "It is
not intended by the constitution of New Jersey that the title to an
act should embody a detailed statement, nor be an index or ab-
stract, of its contents. The one general object, the creation of an
independent municipality, being expressed in the title, the act in
question properly embraced all the means or instrumentalities to be
employed in accomplishing that object. As the state constitution
has not indicated the degree of particularity necessary to express in
its title the one object of an act, the courts should not embarrass
legislation by technical interpretations based upon mere form or
phraseology. The objections should be grave, and the conflict be-
tween the statute and the constitution palpable, before the judiciary
should disregard a legislative enactment upon the sole ground that it
embraced more than one object, or, if but one object, that it was
not sufficiently expressed by the title." The section of the constitu-
tion is fully complied with when the law has but one general object,
which is fairly indicated in its title. *People* v. *Mahaney*, 13 Mich
495. On this subject the supreme court of South Dakota, in *State*
v. *Morgan*, supra, said: "The title need not index all the details of the
act. It is sufficient if the language used in the title, on a fair con-
struction, indicates the purpose of the legislature, so that, making

every reasonable intendment in favor of the act, it may be said that the subject of the law is expressed in the title. As said by the supreme court of Illinois in the case of *Johnson* v. *People*, 83 Ill. 436: "The constitution does not require that the subject of the bill shall be specifically and exactly expressed in the title; hence we conclude that any expression in the title which calls attention to the subject of the bill, although in general terms, is all that is required. The constitution authorizes one subject and any number of matters, provided they have any natural or logical connection with each other in legislation." It is also held that the generality of a title is therefore no objection to it, so long as it is not made a cover to legislation incongruous in itself, and which by no fair intendment can be con sidered as having a necessary or proper connection. Cooley, Const. Lim. p. 174; Suth. St. Const. § § 86-88.

Testing the title of the act in question by the foregoing rules, we have no hesitation in holding that the subject of the act is sufficiently expressed in the title. The title is extremely crude. Fewer words would have been sufficient to have expressed the purpose of the legislation, and those employed could have been more aptly arranged. It is patent, however, from the title that the general purpose of the act is to provide means for securing homes for abandoned, neglected, or grossly illtreated children. All reference to children's home societies in the title could have been properly omitted, for such societies are clearly instrumentalities utilized by the state to accomplish its purpose to secure homes for children of the classes named. The fact that they are named, however, does not mislead or conceal the general object of the act, which is otherwise sufficiently expressed. Indeed, counsel for petitioner does not contend otherwise. He states in his brief that "the title indicates that it is for the purpose of securing homes for children." His contention is that "the act really makes provision for securing children for homes." This contention is sufficiently disposed of by the conclusion already announced,—that all of the provisions of the act are germane to the common purpose of securing homes for children of the classes referred to. The securing of homes for such children naturally and necessarily requies the aid of such legal means as may be necessary to accomplish that object: One of the means so employed is the investigation conducted by the county court. It is apparent, also, that the purpose of the legislature to provide homes for such children could not be accomplished in the absence of provisions authorizing them to be taken from their abandoned condition or from parents who had forfeited their rights as parental guardians. These provisions are clearly germane and in furtherance of the general purpose of the act. The act in question, including the title, was copied literally from Minnesota. Chapter 17, Gen. Laws Minn. 1893. Important amendments have been made by the legislature of that state, but the act, in its substantial features, still continues in force; and, while that state has the same constitutional provision as is found embodied in section 61, it

does not appear to have been challenged as unconstiutional thereunder.

It is also urged by counsel for petitioner that the act conflicts with section 111 of the state constitution. This section, among other things, confers upon county courts. exclusive · original jurisdiction in probate and testamentary matters, and for the appointment of guardians and settlement of their accounts, and such other probate jurisdiction as may be conferred by law. · It is claimed that the act in question confers upon county' courts other and further jurisdiction than is granted by the constitution. We are of opinion that the duties · enjoined by the statute in question upon county courts come within the constitutional jurisdiction of such courts, in the matter of guardianship. But, even were this not so, the exclusive jurisdiction not being vested in other courts by the constitution, it was within the province of the legislature to confer this jurisdiction upon county courts. ·

A more serious criticism is directed against those provisions of the act which seemingly confer upon societies receiving children of the classes named an unrestricted authority over them, including the right to do with them as they see fit, and to bind them out up to the age of 16 in the case of girls, and 18 years of age in the case of boys. It requires no argument to show that no such unlimited authority and discretion as to the control of infants can be conferred either upon private individuals or corporations organized for the purposes named. Such a provision would not only impair the constitutional juridiction of county courts over infants, but would be repugnant to every consideration of justice and reason. We are of opinion, however, that this authority is more apparent than real. This act, in legal effect, makes the society the temporal or special guardian of children received by it upon order of a county court; that is it occupies a guardianship relation in reference to children received by it under appointment of the county court. In this state jurisdiction over the persons and property of infants is lodged exclusively in county courts. These courts have plenary jurisdiction and authority over guardians and infants. They may appoint and remove them and may appoint new guardians, and they have complete control of the guardians so appointed. The act in question merely creates a new kind of guardian, of a special and temporary nature, and must be construed with reference to kindred statutes relating to the guardianship of infants and the duties of guardians, as well as the powers of county courts in reference thereto. If this view is correct,—and we think it is,—the acts of these societies are restricted and controlled by the superior power of the county court having juridiction of the children. As was said by the supreme court of South Dakota in *McFall* v. *Simmons,* 81 N. W. Rep. 898. "The county court does not lose jurisdiction to appoint a guardian or discharge him by reason of the making of one order or judgment. It may make a new order, and appoint, remove, or dis-

charge a guardian, whenever the circumstances of the case require such action on the part of the court." In this view, the acts of societies which receive children under this statute are expressly subject to the control of the county court committing such children to their custody; and such acts may be approved or disapproved by such court, and for sufficient cause the court may revoke its order committing such children to the temporary guardianship of the society. But if we should adopt a different construction of the provisions referred to, and hold that they are not restricted by the supervisory authority of county courts, and are therefore invalid, it would not affect this case, or the present right to the custody of these children, for the reason that they have not been bound out, and are not held by respondent under said objectionable provision, but are held under the order of a county court having full jurisdiction to place them in the custody in which they now are, independent of such objectionable provision.

Section 1 of the act requires such society, after incorporating, to procure and file with the secretary of state "a certificate signed by the governor and three or more members of the supreme court * * * of their confidence in the trustworthiness of said corporation for such puropses," as a condition to the power to legally receive children thereunder and to have the legal relation authorized by the act. It is claimed that this imposes a nonjudicial duty upon the members of this court, in violation of § 96 of the state constitution, and renders the act void. There is no merit in this contention. There is no legal duty imposed upon the members of the court. The obligation is placed upon societies to get this certificate of trustworthiness as a condition of having the legal status contemplated by the statute. But no legal obligation is placed upon the judges of this court to make such certificates. They may make them, or refuse, at their option, and in so doing would violate no requirement of the law. The duty, if duty at all, is a moral one only, and not a legal duty.

It is also claimed that the statute provides for an involuntary servitude which is not a punishment for a crime, and this without due process of law. Neither contention is sound. The act provides for a judicial investigation of the condition of children of the classes named, after notice, and the custody provided for such children is not servitude, as referred to in the constitution. We quote with approval the following from Ryan, C. J. in *Milwaukee Industrial School* v. *Milwaukee Co. Sup'rs,* 40 Wis. 328, 22 Am. Rep. 702: "The political necessity and duty of the sovereignty to make provision for the care of subjects or citizens unable for any cause to take care of themselves, and destitute of other care, has been too long recognized in all civilized countries, too well established under the state governments of this country, to be regarded as an open question. All public asylums, here and elsewhere in the country, for the poor, for the insane, for orphans, for the helpless and destitute by any cause, are witnesses to the political necessity of public charity. And we

assume as a principle underlying every consideration in this case, that it is the duty and policy of the state to provide efficient means, in its discretion, for the care of all destitute and helpless persons within it; that public charity, in such cases, is not 'imprisonment,' and not 'without due process of law.' We cannot understand that the detention of the child at one of these schools should be considered as imprisonment, any more than its detention in the poor house; any more than the detention of any child at any boarding-school, for the time, in loco parentis to the child. Parental authority implies restraint, not imprisonment. And every school must necessarily exercise some measure of the parental power of restraint over children committed to it. And when the state, as parens patriæ, is compelled by the misfortune of a child to assume for it parental duty, and to charge itself with its nurture, it compelled also to assume parental authority over it. This authority must necessarily be delegated to those to whom the state delegates the nurture and education of the child. The state does not—indeed, we might say could not—intrude this assumption of authority between parent and child standing in no need of it. It assumes it only upon the destitution and necessity of the child arising from want or default of parents. And, in exercising a wholesome parental restraint over the child, it can be properly said to imprison the child no more than the tenderest parent exercising like power of restraint over children."

In this case it appears that the county court of Griggs county, in the proper exercise of its jurisdiction, and after an investigation and hearing, determined that the petitioner, because of her lewd and immoral life, was unfit to longer sustain the relation of natural guardian to her children, and, pursuant to the authority conferred by the statute ordered them to be placed in the custody of the respondent. Whether all of the proceedings in the county court which culminated in the order were strictly regular we need not inquire. For it is well settled that courts will not review mere errors upon an application for a writ of habeas corpus, where the court has jurisdiction of the person and subject-matter, as in this case. The order under which respondent retains the custody of petitioner's children was made by a court having jurisdiction of the children, and clothed with authority to make the order in question. Neither did the making of such order exhaust and terminate the jurisdiction of said court over these children, as counsel for petitioner mistakenly assumes. That jurisdiction is continuous during their infancy, and extends to the making of such new and further orders concerning their care, education, and custody as shall be deemed necessary and proper. That court is open to the petitioner, as well as to others, to correct or check any abuses of said children by the respondent or any other person to whose custody they may be committed. It is also open to hear her application to be restored to her relation as their natural guardian, upon proof, satisfactory, that she has become fit to sustain that relation, which by her lacivious conduct she has

forfeited. On this point, see *McFall* v. *Simmons,* (S. D.) 81 N. W. Rep. 898.

For the reasons stated, it follows that the writ will be denied. All concur.