## STATE FINANCE COMPANY v. A. C. MATHER.

Opinion filed May 15, 1906.

**Taxation — Assessment — Description of Property.**

1. A sufficient description of the property intended to be assessed and taxed is inherently essential to a valid tax.

**Same.**

2. The term "East middle" of a given town lot is unintelligible.

**Statutes — Title of Action — Constitutional Law.**

3. Chapter 165, page 220, Laws 1901, amending section 1269, Rev. Codes of 1899, is constitutional. It is a valid limitation act, and its title is sufficient.

**Verification of Assessment Roll.**

4. The failure to attach to the assessment roll the prescribed assessor's affidavit does not invalidate a tax sale of real property made under the revenue law of 1897. (Young, J., dissenting.)

**Same — Statutory Bar to Action.**

5. The verification of the assessment roll by the assessor is merely a legislative requirement which is neither inherently or constitutionally essential to an assessment; and objection to a tax sale under the tax law of 1897 for such irregularity is barred by section 1263, Rev. Codes of 1899. Eaton v. Bennett, 10 N. D. 346, 87 N. W. 188, disapproved. (Young, J., dissenting.)

**Appeal — Presumption as to Correctness of Abstract.**

6. In the absence of proper objection this court will presume that the abstract on appeal is correct and was properly prepared.

**Same.**

7. This rule will be relaxed only in exceptional cases.

Appeal from District Court, Grand Forks county; *Fisk, J.*

Action by the State Finance Company against A. C. Mather. Judgment for plaintiff and defendant appeals.

Modified.

*J. B. Wineman* and *B. G. Skulason,* for appellants.

A description is sufficient that is generally understood to refer to the land in question. Gilfillan v. Hobart, 24 N. W. 342; Power v. Bowdle, 3 N. D. 107, 64 N. W. 404; Doherty v. Real Estate Title Ins. & Trust Co., 89 N. W. 853; Kampfer v. East Side Syndicate 104 N. W. 290.

The purchase at a tax sale is a contract, and no subsequent statute can import new terms into it, or add to those before expressed. Morgan v. Commissioners, 27 Kan. 89; Forqueran v. Donnelly, 7 W. Va. 114; Merrill v. Dearing, 32 Minn. 479; Robinson v. Howe, 13 Wis. 341; Roberts v. First National Bank of Fargo, 8 N. D. 504, 79 N. W. 1049.

The law in force is a part of such contract. Hillebert v. Porter, 28 Minn. 496; Fisher v. Betts, 12 N. D. 197, 96 N. W. 132.

*Charles M. Cooley* and *Wicks, Paige & Lamb,* for respondent.

Where the statute has prescribed a form of verification, it must be followed in all essential particulars. Cooley on Taxation (3d Ed.) 761; Shattuck v. Bascom, 105 N. Y. 39; State v. Seahorn, 139 Mo. 582; Steffens v. King, 123 N. Y. 31; Van Rensseler v. Whitberk, 7 N. Y. 517; Gilchrist v. Dean, 29 N. W. 330; Daniels v. Watertown Twp., 28 N. W. 673; Eaton v. Bennett, 10 N. D. 346, 87 N. W. 188; Lee v. Crawford, 10 N. D. 482, 88 N. W. 97; Poldi v. Poldi, 47 N. W. 510.

ENGERUD, J. This is an action in statutory form to determine adverse claims to two tracts of city property. The defendant, Mather, sets up in his answer numerous tax sale certificates under which he claims to have valid liens upon each of the tracts described in the complaint. The trial court held all the tax sale certificates invalid, and judgment was entered to that effect. The defendant appealed from the judgment, and demands a trial de novo.

One of the tracts involved is a piece of ground 22 feet wide extending across two platted lots. In the several tax sale certificates which defendant asserts cover the above-mentioned tract the description of the land sold is as follows: "Grand Forks City, O. T., East middle 22 feet, lot 9, block 21." Even if we could assume that "O. T." means original townsite, we are at a loss to know what is meant by the "East middle" of a tract of land, and counsel have not enlightened us. The assessments upon which these certificates are based used the same terms in describing the land assessed. The description is meaningless, and, if the tract described in the complaint was in fact the land intended to be taxed, it is plain that the entire tax proceeding was utterly void. The other parcel involved is a strip 47 feet wide extending across both the same lots above mentioned and lies next to the alley

which runs back of said lots. That is the sum and substance of the very lengthy description set forth in the complaint. It may be sufficiently designated as the rear 47 feet of each of said lots. Throughout the tax proceedings hereafter referred to, the rear 47 feet of each lot was dealt with as a separate piece of land. They were assessed, taxed, and sold for taxes separately, so that for each sale there were two certificates, one for each lot.

Defendant holds two certifiates issued December 7, 1897, for the taxes of 1896. These certificates are barred by the provisions of chapter 165, p. 220, Laws 1901. That enactment amended section 1269, Rev. Codes 1899, by adding thereto the following proviso: "Provided, however, that all rights of such purchaser and his assigns to possession, title or lien of any kind of, to or upon such piece or parcel of land, shall cease absolutely and be deemed forfeited and extinguished, unless possession thereof be taken by him or them, or proceedings for such possession be by him or them instituted, or deed therefor be executed and delivered to him or · them by the proper officer, prior to the expiration of six years from and after the date of such certificate, or in case of sales heretofore made and where five years or more have already elapsed since the date of such certificate, then prior to the expiration of one year after the taking effect of this section." This action was commenced in January, 1904, and the certificate became barred December 7, 1903. It is conceded that the defendant has taken no steps to avoid the effect of this law. The power of the legislature is beyond question to limit the time within which a certificate holder shall assert his rights, as such, to the land and to a deed after his right to do so accrues. Such a statute differs in no respect from any other limitation statute. It does not affect the right itself but affects only the remedy. The certificate gives the purchaser a right to take possession of the land after three years, and entitles him to a deed after the termination of the redemption right by the required notice. This act deprives him of none of these rights, but merely requires him to exercise them within a reasonable time after the right shall have accrued. The statute amply protects the rights of the holders of certificates issued before the law took effect by allowing a year for them to enforce their rights after the law took effect. Bank v. Braithwaite, 7 N. D. 358, 75 N. W. 244, 66 Am. St. Rep. 653; Osborne v. Lindstrom, 9 N. D. 1, 81 N. W. 72, 46 L. R. A. 715, 81 Am. St. Rep. 516. The title of

the act was clearly sufficient. It is stated in the title that the act was an amendment of section 1269, Rev. Codes of 1899, relating to the rights of purchasers at tax sales. It was not necessary to state in the title the precise point in which such purchasers would be affected. Power v. Kitching, 10 N. D. 254, 86 N. W. 737, 88 Am. St. Rep. 691; State v. Society, 10 N. D. 493, 88 N. W. 273; Erickson v. Cass County, 11 N. D. 494, 92 N. W. 841.

The defendant holds certificates, however, for tax sales in 1898, 1899, 1900 and 1902. The plaintiff claims that the several assessment rolls upon which these respective sales are based were not properly verified by the assessor's affidavit, required by section 1219, Rev. Codes 1899. It has been held by this court that the failure of the assessor to verify the assessment roll by attaching the prescribed affidavit, is fatal to a tax sale based on such assessment. Eaton v. Bennett, 10 N. D. 346, 87 N. W. 188. Neither that case nor those it cites involved tax sales governed by the revenue law of 1897 which is the one now in force. Chapter 126, p. 256, Laws 1897; section 1176 et seq., Rev. Codes 1899. In that case the court said in effect that the act of verifying the assessment roll by the prescribed affidavit was a part of the act of assessing, and that a valuation by the assessor, although sufficient in all other respects, was no assessment if the assessor's affidavit was not attached to the roll. This unqualified language was in effect disapproved by the decision in Douglas v. City of Fargo, 13 N. D. 467, 101 N. W. 919. In that case the assessment rolls were not verified by the assessor's oath. The plaintiff in that case, relying on Eaton v. Bennett, asserted that there was no assessment, and hence no tax. The court held that, although the defect might be fatal at law, it was not fatal in equity. It is manifest that if there was no assessment there could be no tax either in law or equity. We hold that the verification of the assessment roll by the assessor is not any inherently necessary part of the act of assessment proper, but is merely a legislative requirement. The act of assessment is performed as to the land when the assessor determines its value. That is all that is inherently necessary, and it is clear that, under our system of real estate taxation, no less will suffiice. The assessment must of course be evidenced by some authentic record. It is self-evident that the assessor's affidavit is not inherently essential either to the assessment or as an authentication thereof. The constitution does not expressly or impliedly require it. The pro-

vision for the affidavit is a purely legislative requirement. That be-
ing so it is plain that the legislature has the power to either dis-
pense with it altogether or to declare that the nonobservance of this
requirement shall not be held to be a valid objection to the tax
or a tax sale. Beggs v. Paine, 109 N. W. 322, and Nind v. Myers
(just decided) 109 N. W. 335. In the absence of a curative statute
such a defect would, in an action at law, be fatal to the tax, in the
sense that it would not support the sale, although not fatal in a
court of equity. Douglas v. City of Fargo, 13 N. D. 467, 101 N.
W. 919. But the defect is not such a jurisdictional defect as that
it cannot be remedied by a limitation act or declared immaterial
by the same statute which requires it. Beggs v. Paine and Nind v.
Myers. See, also, Williams v. Supervisors, 122 U. S. 154, 7 Sup.
Ct. 1244, 30 L. Ed. 1088. With respect to a tax sale the legislative
power to cure or bar objections grounded on the nonobservance of
such defects would necessarily be circumscribed by certain con-
stitutional limitations. But this·defect is not of that character.
In the revenue law of 1897 the legislature exercised this power
to its full extent. By section 78 of that law (chapter 126, p. 286,
Laws 1897; section 1263, Rev. Codes 1899) the legislature declared
that no sale should be invalidated "unless the party objecting to
the same shall prove either that the property upon which the
tax was levied was not subject to taxation, or that the taxes were
paid prior to such sale, or that notice of such sale as required by
law was not given; or that the piece or parcel of land was not
offered at said sale to the bidder who would pay the amount for
which the piece or parcel was to be sold, in which case, but in no
other, the court may set aside the sale." No language could more
plainly and emphatically express the legislative intent that no omis-
sion or defect in the proceedings before the sale should be ground
for invalidating the sale unless the omission or defect was one
or more of those mentioned in that section. The section does not
declare what shall be the effect of any omission or defect if ob-
jection is made before the sale. It purports to bar all objections
except those mentioned if not made before sale. There can be no
doubt that the section cures or bars every defect which is within
the power of the legislature to declare nonessential. The language
of the section taken literally goes farther than this and it is clear
that, to the extent that it purports to declare nonessential those
acts which are inherently necessary or which are necessary by rea-

son of constitutional provisions, it cannot be enforced literally. Beggs v. Paine and Nind v. Myers.

The tax sale involved in Eaton v. Bennett was made under the territorial revenue law. The deed was issued in 1893, and it was claimed that the limitation provision in the revenue law of 1897 barred all objections to its validity. Section 1264, Rev. Codes of 1899. The territorial revenue law contained no provision similar to section 78 of the revenue law of 1897. Section 1263, Rev. Codes 1897. That decision therefore does not govern this case. We think the decision is erroneous in holding that the want of an assessor's affidavit was a defect which could not be cured by a limitation act. Such a holding is in direct conflict with the rulings of all other courts that have had occasion to pass upon the question. Many of the decisions cited from other states in that case use language similar to that in Eaton v. Bennett. On examination it will be found that the tax laws involved in them had no curative or remedial provisions like section 1263, and no limitation act was involved. Most of the cases are actions at law to try the title. In the cases cited from 6 and 9 Nebraska that court used language very similar to that in Eaton v. Bennett, but that court very soon after qualified it, and has ever since adhered to the rule announced in Douglas v. City of Fargo, 13 N. D. 467, 101 N. W. 919; Wood v. Helmer, 10 Neb. 66, 4 N. W. 968; Twinting v. Finlay, 55 Neb. 152, 75 N. W. 548, and cases cited.

The same is true of the Michigan cases cited. Such a defect was held to be within the reach of a curative statute. Auditor General v. Sparrow, 116 Mich. 574, 74 N. W. 881. The statute involved in that case was similar to the one now before us.

The Missouri cases were ejectment actions. The tax law there involved was wholly different from our present law, though similar to the Dakota territorial revenue law. Under those systems, as said in Abbott v. Lindenbower, 42 Mo. 162, at page 167: "It is the owner who is taxed and not the land. He is taxed in respect to his title or ownership in the land, and taxation is to be in proportion to the value of the property. It is the owner who is to pay the tax, and it is his title or interest in the land which is to be transferred by a sale, if any title pass." Under such systems the land is only secondarily liable and it is self-evident that a proceeding directed against one not the owner would not be of any effect against the owner unless the land itself was seized, and, in

the absence of such seizure, it is manifest that the deed could not be made conclusive evidence. It was not "due process" because it lacked the element of notice. In State ex rel. v. Schooley, 84 Mo. 447, that court declared: "Beyond doubt it is competent for the legislature to dispense with the affidavit of the assessor, or, if not wholly dispensed with, to provide that a failure to attack such oath shall not render invalid the assessment, but, in the absence of any such legislative declaration, the courts ought not so to hold."

Martin v. Barbour, 140 U. S. 634, 11 Sup. Ct. 944, 35 L. Ed. 546, is not in point. Under the statutes involved in that case the limitation did not take effect unless the notice required by the statute was given. There was no competent evidence of such a notice, and hence the irregularities were not cured or barred. The taxes were not held void, but were tendered by the plaintiff. Marx v. Hanthorn, 148 U. S. 172, 13 Sup. Ct. 508, 37 L. Ed. 410, does not involve the question in support of which it was cited. The Oregon law purported to make the deed as soon as issued conclusive evidence unless impeached for stated reasons. The Oregon tax law is similar to that of Missouri, mentioned above. The tax is imposed, not directly on the specific land which has been assessed but against the owner personally the same as personal property taxes in this state. The land is not seized for the tax until the sheriff has exhausted the tax debtor's personal property subject to levy or has made return that none can be found. Then he is authorized to seize real property and sell it the same as he would under an execution on a judgment. He may seize and sell any tract of land owned by the debtor whether it is the tract described in the assessment roll or not, and there is no fixed time for the seizure and sale. Hill's Ann. Laws 1892 of Oregon, c. 17, tit. 6. The only notice the owner of the land receives as to whether his land, or what part of his land, will be sold is the published notice corresponding to the notice of an execution sale in our state. Such a proceeding has no analogy to the present tax laws of this state as to real property. The various essential acts preceding the sale and even the sale itself do not take place at stated times fixed by the statute, and hence the statute is neither actual or constructive notice of the sale as under our real property tax law. We called attention to this difference in Beggs v. Paine and Nind v. Myers. The name of the owner and the service of notice in some appropriate form is constitutionally essential to

the validity of such a sale and the legislature cannot cure or bar such a jurisdictional defect except by a statute requiring adverse possession.

This precise point, based on the same irregularity, has been be-before the courts of New York. They held, as shown by the cases cited in Eaton v. Bennett, that in the absence of a limitation or a prior curative act, the defect was fatal to the sale. But the same court also decided that the defect was not fatal to the tax in equity, and that the want of an assessor's affidavit was not one of those jurisdictional defects which was beyond the reach of a curative act validating the tax, or a limitation act, even though subsequently enacted barring objection to the sale by reason of the defect. These cases were reviewed and approved by the United States Supreme Court. These cases are cited in Beggs v. Paine and Nind v. Myers. As we there said, the question is a federal one under the Fourteenth amendment of the national constitution and the federal decisions are controlling except so far as the construction of the law is concerned.

But there is no room for construction of so unambiguous a statute as the one in question. The only question is, does it, as applied to the facts of this case, violate the constitutional rights of this plaintiff? We think the decision in Eaton v. Bennett is in conflict with the views unanimously expressed in Roberts v. Bank, 8 N. D. 504, 79 N. W. 1049. In that case there was clearly no assessment of the tract of land sold and it was rightly held that the defect was a jurisdictional one which could not be barred by such a limitation act. It was there said (page 512) that these jurisdictional defects which could not be barred by such an act where the "nontaxability of the property, the absence of any assessment, the absence of any levy, the fact of payment, the absence of a tax sale, and the fact of lawful redemption." Substantially the same rule was announced in Wells County v. Mc-Henry, 7 N. D. 246, 74 N. W. 241. See, also, Dever v. Cornwell, 10 N. D. 123, 86 N. W. 227. The fallacy of the opinion in Eaton v. Bennett lies in its failure to distinguish between those things which are mandatory solely because the legislature has seen fit to make them so, and those things which are inherently or by reason of constitutional provisions essential to the jurisdiction of the taxing power. This distinction has been pointed out in Beggs v. Paine and Nind v. Myers. Being convinced that the reasoning

in Eaton v. Bennett is erroneous we hold that it should not be followed as a precedent in any case not involving the territorial revenue law. As to whether the decision has become a rule of property which must be adhered to in future cases involving the same law, we do not now decide. It will be time enough to decide that question when such a case arises.

Respondent in his brief asserts that the abstract does not correctly represent the description of the land as shown by the certificates offered in evidence. It is claimed that the certificates are in fact void on their face because of the use of an unintelligible abbreviation in describing the land sold. No timely motion was made to strike out or correct the abstract. The case was tried and is here for review under section 5630, Rev. Codes 1899. There being no timely objection, we must presume that the abstract was prepared in accordance with the rules and truly shows everything essential to the questions for review, and therefore we decline to explore the record to look for defects in the certificate not disclosed by the abstract. The respondent's title is not in jeopardy. If the certificates are in fact invalid, as claimed by respondent, the tax itself is not invalid, because all the defects upon which respondent relies are cured by chapter 168, p. 234, Laws 1903. The only question, therefore, is whether the plaintiff shall redeem from the county or redeem from the certificate holder. Redemption from the latter will cost more, but one who has so long shirked his just share · of the public burden is not in a position to ask for the relaxation of the rules in his favor. All the tax sale certificates for the rear 47 feet of lots 9 and 11 issued after the year 1897 should be held valid. The certificates covering the same property issued in 1897, and prior thereto, are barred by chapter 165, p. 220, Laws 1901. All the other certificates, as well as the taxes upon which they are based, are void. Neither party should recover costs in district court, but the appellant is entitled to the taxable costs of this appeal.

The district court will modify the judgment appealed from to conform to this opinion.

MORGAN, C. J., concurs.

· YOUNG, J. (dissenting in part). I concur in the foregoing opinion, except in the conclusion that the failure of the assessor to verify the assessment roll does not render a tax sale based

thereon invalid, and that the assessment is a mere irregularity and is cured by section 1263, Rev. Codes of 1899.

The verification required by section 1219 of that Code (section 42, c. 126, p. 271, Laws 1897) and under which the alleged tax was laid, is identical with that required in the 1890 revenue law (section 41, c. 132, p. 391, Laws 1890), and is in no material respect different from section 1551, Comp. Laws 1887, which was construed and applied in Eaton v. Bennett, 10 N. D. 346, 87 N. W. 188. There has been no change in the statute since the decision in Eaton v. Bennett, which indicates an intention on the part of the legislature that this provision should be given a different construction. In construing this provision in that case, this court held, upon mature deliberation, that it is mandatory; that the verification is an essential part of the assessment, and that the assessment is not complete without it; that it is required for the benefit of the taxpayer; that its omission renders the tax void; and that it cannot be cured or barred by a statute of limitations. The court, speaking through Chief Justice Wallin, said: "This section of the statute is mandatory in its terms, and was obviously designed to safeguard the interests of the taxpayer. This is its sole design and purpose. It has no bearing whatever upon the matter of expediting or facilitating the dispatch of public business. Under the law the taxpayer is entitled to have his own property and all other property in his taxing district officially valued by an assessor, who acts under the sanction of an oath, and the legislature has carefully framed a form of oath which the assessors are required to attach to their work when the same is completed and returned. There are many cases holding that the omission to annex to the roll the prescribed affidavit and certificate is a fatal omission, which goes to the groundwork of the tax, and hence one which defeats the jurisdiction to lay the tax; and cases are not wanting which hold that where the assessor, in annexing the affidavit to the roll, has omitted therefrom some material averment prescribed by sovereign authority, such omission is fatal to the tax. Mandatory provisions—and those intended solely for the benefit of the taxpayer are manadtory—must be substantially complied with by the officials who attempt to impose the tax burden upon the citizen; and the omission to do so, under the decided weight of authority, is fatal to all proceedings based upon such attempted taxation, including tax certificates and deeds issued thereon pursu-

ant to a sale for such pretended taxes. Nor will the statute of limitations begin to run in favor of a tax deed based upon such attempted taxation. The rule that mandatory provisions of the statute must be substantially observed by taxing officers, and that the disregard or violation of such provisions is fatal to the tax and defeats the jurisdiction of the taxing officers is well settled in this state, and has become, therefore, practically a rule of property, and hence a rule which this court is bound to uphold until the same has been modified by constitutional legislation. The authorities cited will fully sustain the following propositions: First. That a valid assessment evidenced by an official return is essential to a valid tax, and that fatal defects in the record of an assessment cannot be aided by evidence aliunde. Second. A tax deed based on a void assessment is itself void, and does not operate to start running the statute of limitations. Third. Where the statutes require an assessor to authenticate his assessment roll by annexing thereto an affidavit in prescribed form, it will be fatal to omit such affidavit of authentication.

I am satisfied from an examination of the cases cited in the opinion, and of many others, that the construction announced in the above case represents the better view and the prevailing and almost universal construction given to similar statutes. The question was directly involved in Martin v. Barbour (C. C.) 34 Fed. 701, a case arising in Arkansas, and the United States Circuit Court held that the failure to verify was fatal to the tax and was not cured by the statute of limitations. The decision upon these points was expressly affirmed by the Supreme Court in Martin v. Barbour, 140 U. S. 634, 11 Sup. Ct. 944, 35 L. Ed. 546. The case, although persuasive and supporting our conclusion in Eaton v. Bennet, is not necessarily controlling, for the question as to what method shall be pursued in assessing property, and when and how it shall be laid, is essentially a state question, which is settled by state legislation, and the federal courts, as a rule, merely follow the construction placed thereon by the state courts. Castillo v. McConnico, 168 U. S. 674, 18 Sup. Ct. 229, 42 L. Ed. 622. The question, in my opinion, is purely one as to the construction of the statute. There is no constitutional provision, state or federal, which declares what shall constitute an assessment. Our constitution makes it the duty of the legislature to enact laws for raising revenue. The matter of providing for the assessment is left to the

legislature. This includes, among other things, the power of desig-
nating an officer to make it, the time when it shall be made, and
the manner in which it shall be made—subject, of course, to the
underlying prohibition that it could not provide for an assessment
which, in its very nature, lacks the fundamental elements of an
assessment.

I agree with the majority that the legislature had the power
to provide a different mode for assessing property: It could have
provided a different method of authenticating the roll, and I think
that it could also have provided that the assessment should not
be made under oath, and that it should not be authenticated, al-
though such a course would deprive the taxpayer of an important
safeguard. Still, this does not meet the question at issue, for the
question is not whether the legislature could have passed a law
omitting the verification, for it has not done so, but it is whether a
statute which requires a verification is mandatory or directory;
whether this provision is for the benefit of the taxpayer, or is
merely a provision for the guidance of the taxing officers. If it is
mandatory, as this court has heretofore held, an assessment made in
disregard of it is void, and the command of the legislature con-
tained in section 1263, that sales shall not be set aside on any
other grounds than those therein stated is utterly unavailing as
to a sale made upon such an assessment. To sanction the applica-
tion of the section to such sales is to approve an attempted usurpa-
tion of judicial power by the legislature, and to deprive the land-
owner of his property without due process of law, for I assume that
it will be admitted that he has a right to the protection of all laws
enacted for his benefit. That the provision requiring the assess-
ment to be made and returned under the sanction of an oath is
for his benefit, has been authoritatively settled in this state, if
it is possible for a court of last resort to settle anything. So far
as any opinions were expressed prior to the decision in Eaton v.
Bennett, they were in harmony with the construction contained
in the language I have quoted from the opinion in that case. The
subsequent case of Douglas v. City of Fargo, 13 N. D. 467, 101 N.
W. 919, assumed the correctness of the decision in Eaton v. Ben-
nett. In that case certain tax certificates were attacked upon the
ground that the assessment roll was not verified. This court
assumed that both the tax and sale were illegal for that reason,
and that the plaintiff would have been entitled to the relief he

sought, but for his failure to do equity. The case did not turn upon the question as to whether the tax was legal or illegal. The court assumed that, as a basis for acquiring time, it was illegal, but held that that fact alone did not relieve the tax debtor from making tender of the amount justly due, adopting the Wisconsin rule that in such cases, "unless it is clearly shown that the illegal tax is also unequal, inequitable and unjust, relief will only be granted upon the condition that the irregular and illegal tax should be first paid." Fifield v. Marinette, 62 Wis. 532, 22 N. W. 705. It is clear that in determining whether payment or tender shall be required as a condition for relief, the controlling question is not whether the tax is legal, but whether it is just and equitable, and in determining this, the court is governed by equitable rules and is not bound by the requirements of the law under which the tax is laid. The rule is entirely different in determining the question of title, for in all such cases, the rights of the purchaser rest solely upon the statute and the proper observance of its provisions by the officers charged with its execution. He buys under the rule caveat emptor. No equitable considerations operate in his favor. He must look to the law as the sole source of his title. If there is a failure to comply with a provision enacted for the benefit of the taxpayer, he is entitled to its protection. I find no sufficient reason for overruling Eaton v. Bennett. It affords a measure of protection to taxpayers. It gives him the assurance that his property has been valued for the purpose of taxation under the sanction of an oath, and it enables him to know with certainty that the document purporting to contain the description and valuation of his property is the official assessment, a condition which would not exist if the assessment rests in an unauthenticated and fugitive written statement.

The interests of property owners are entitled to consideration and to accord it to them does no injustice either to the public or tax purchaser. This court has established the rule that in all cases where it is attempted to set aside tax sales and tax deeds, relief will not be granted until the tax justly due shall first be paid or tendered. Douglas v. City, 13 N. D. 467, 101 N. W. 919, and Powers v. Bank, and State Finance Co. v. Beck, in which the opinions have just been handed down. The rule established in these cases affords ample protection to the public and to tax purchasers as well. Property owners are not only required to pay legal

taxes, but also illegal taxes, unless they are also inequitable and unjust. I am not in favor of going further and withdrawing from property owners, when the question of title is involved and by a change of construction, the protection of a provision of the statute enacted for their benefit. But aside from the correctness of the construction announced in Eaton v. Bennett, it should be adhered to under the rule of stare decisis. It has been accepted and acted upon as settled law by taxing officers, by taxpayers, by tax purchasers, and the public generally and the magnitude and multiplicity of the interests involved forbid an unsettling of the law by announcing a different construction. If there is one rule of construction which more than another is binding upon the courts it is that a deliberate construction of a statute and particularly one relating to taxation, should be followed. "The judicial interpretation of a statute becomes a part of the statute law, and a change of it is in practical effect the same as a change of the statute. Where, therefore a decision or series of decisions has become a rule of property, it is evident that justice and reason require it to be adhered to so long as the statute upon which it is based remains unchanged." Endlich on Interpretation of Statutes, 363, and cases. Sutherland on Statutory Const. section 310. See, for further statements of this rule, Bellows v. Parsons, 13 N. H. 256; Lessee of Hannel v. Smith, 15 Ohio, 134-139; Kneeland v. City, 15 Wis. 454, 691. A mere change of opinion is not a sufficient ground for overturning a previous construction. This was well stated by Judge Paine in the case last cited, in speaking of the binding force of a former construction of a revenue law : "It is no justification to demonstrate that the first decision was incorrect. If it were, I think we should have such justification here. For, that a rule taxing different kinds of property at different rates is not a uniform rule, has always seemed to me a proposition too plain for argument. But a proposition appears plain to one mind and its converse equally plain to another. Experience teaches the necessity of recognizing this fact, and the philosophy of the law, which requires that rules of property, once settled by judicial decision shall not be disturbed, is founded upon it. The question in such cases is not whether the first decision was correct, but whether a decision has been made, and business conducted on the faith of it. When this has been done, it would be difficult to imagine a case where a court would be justified in reopening the question

that had been decided.  There must be an end somewhere.  'The world waits and listens for the judicial determination, and then acts accordingly.'  Men have the right to rely with certainty upon the decision of the highest tribunal in the state,' in matters where their business is to be regulated by such decision.  *  *  *"

The power of the legislature to provide a different mode of assessment is conceded.  But until it is so changed, the provision in question which has been construed as one for the benefit of the taxpayer, should be given effect according to its settled construction, and should not be changed by judicial construction.  A change by the legislature operates prospectively and without injury, but not so as to a change by judicial construction.

In my opinion, and for the reasons stated, the case of Eaton v. Bennett should not be overruled.