(79 N. W. Rep. 859.)

---

### WILSON L. RICHARD *vs.* STARK COUNTY.

Opinion filed May 18, 1899.

**Statutes—Title of Act—Constitutional Law.**

> Chapter 25, Laws 1895, is entitled "An act to increase the revenues of the state by changing and increasing the boundaries of the counties of Billings, Stark and Mercer." The body of the act simply increases the boundaries of such counties. *Held,* that the act is unconstitutional, because the subject of the act is not expressed in the title, as required by section 61 of the constitution of this state.

Appeal from District Court, Stark County; *Winchester,* J.

Action by Wilson L. Richards against Stark County. From a judgment sustaining a demurrer to the complaint, plaintiff appeals. Reversed.

*John Burke* and *Burke Corbett,* for appellant.

*L. A. Simpson,* for respondent.

BARTHOLOMEW, C. J.   Plaintiff brought this action against Stark County to procure by a civil action relief formerly recoverable by information in the nature of quo warranto. There was a general demurrer to the complaint, under which, of course, no question as to parties plaintiff or form of action could be raised. The demurrer was sustained, and plaintiff appeals from the order. It is conceded that the case turns exclusively upon the constitutionality of chapter 25, Laws 1895. Plaintiff brings this action upon the theory that such act is unconstitutional. If he is in error, he must fail. The act is attacked as violating a number of the provisions of the constitution, but we shall confine ourselves to a consideration of section 61, which reads: "No bill shall embrace more than one subject, which shall be expressed in its title, but a bill which violates this provision shall be invalidated thereby only as to so much thereof as shall not be so expressed." This section has on three

different occasions been brought directly before this Court. The first case was *State* v. *Woodmansee,* 1 N. D. 246, 46 N. W. Rep. 970, in which we held that an act entitled "An act to provide for the organization and government of state banks" might properly include a provision providing a punishment for doing a banking business in this state contrary to the provisions of the act. In that case we recognized and indorsed the principle that this constitutional provision must receive a reasonable and liberal construction, and that it was never intended to impede or embarrass legislation, and that provisions for the enforcement of an act are germane to the act itself. The second case was *State* v. *Haas,* 2 N. D. 202, 50 N. W. Rep. 254, which was an attack upon what is known as the "Prohibition Law." It was urged that both the act and the title embraced two subjects,—first, the penalties for the unlawful sale, etc., of intoxicating liquors; and, second, the regulation of the sale of intoxicating liquors for medicinal and other purposes. We held that the one subject was the regulation of the liquor traffic, that this was done by prohibiting in part and restricting in part, that all regulation of the traffic was to some extent prohibitory, and that the exent of the prohibition did not affect the regulating character of the act. The third case was *State* v. *Nomland,* 3 N. D. 427, 57 N. W. Rep. 85. In that case we held the act unconstitutional on the ground that the subject of the act was not expressed in the title. But in that case, as in the preceding cases, the Court recognized to the fullest extent the necessity for a liberal construction of this particular provision; and recognized the fact that it is never necessary that the instrumentalities by or through which the object of an act is to be accomplished should be expressed in the title, and that it was sufficient if the real subject of the act was expressed even in the most general terms in the title. But in this last case the Court held that where the title to the act simply provided for the creation of an instrumentality, and in no manner mentioned the subject upon which, by the body of the act, that instrumentality was to act for the accomplishment of a certain purpose, the defect was fatal, and the act unconstitutional, not because it embraced more than one subject, but because the real subject was not expressed in the title. A reading of the provision discloses that it may be violated in two ways: First. The act must not embrace more than one subject. If it embraces two subjects, and both are fully expressed in the title, still the provision is clearly violated. Black, Const. Law, 288; Cooley, Const. Law, 178. Second. If it embraces but one subject, and that subject be not expressed in the title, the provision is equally violated. This is the clear language of the provision. "But if the act relates to one subject matter, which is properly expressed in the title, and also embraces provisions not related to such subject, which are not mentioned in the title, then the foreign or unrelated matters will be separated from the rest of the statute, if possible, and rejected, while the main body of the act will be sustained." *People* v. *Briggs,* 50 N. Y. 553; Cooley, Const. Law, 148. We have

already seen that the means and instrumentalities by which the purposes of an act are to be accomplished need never be expressed in the title. If the subject be expressed, that is sufficient. Adding the means or instrumentalities neither adds to nor detracts from its sufficiency. Black, Const. Law, 287; Cooley, Const. Law, 170. With this statement of general principles, we may proceed with an examination of the statute in question. It is entitled "An act to increase the revenues of the state by changing and increasing the boundaries of the counties of Billings, Stark and Mercer." It requires no studied analysis of this title to discover—First, that the declared subject of the act is an increase in the revenues of the state; and, second, that the remainder of the title but specifies the means and instrumentalities by which that increase is to be secured. But the allegation of the means and instrumentalities in no manner affects the announced subject. If the title be good, it does not require the additional allegations. If the title be bad, the additional allegations cannot cure it. For the purpose of the question under discussion, the title is simply "An act to increase the revenues of the state." Turning to the body of the act, we find it contains five sections. The first fixes the boundaries of Billings county, the second fixes the boundaries of Stark county, and the third fixes the boundaries of Mercer county. The fourth section provides that the provisions of the three preceding sections' shall not go into effect until the matter has been submitted to a vote of the qualified electors of the respective counties. The fifth repeals all conflicting laws. From first to last, there is no reference, in terms, to the revenues of the state in the body of the act. But counsel for respondent insists that this Court must take judicial notice that the necessary result of the act was to increase the revenues of the state. We do not so understand it. True, we may take notice that all the vast expanse added to the counties named by the act consists of unorganized counties. But, while we have no doubt of its truth, we cannot take judicial knowledge of the fact that such territory is but sparsely populated, and is covered with vast and valuable herds of cattle, horses, and sheep. But that fact cannot aid respondent. Under the law as it stood prior to the passage of this act, all taxable property in unorganized counties was taxed for state purposes in all respects the same as property in organized counties. Sections 1336 to 1339, inclusive, Rev. Codes. No increase in the revenue of the state was possible under the provisions of the act. This is not a case where the act is broader than the title, or where the title is broader than the act. It is simply a case where the subject as named in title is not adverted to in the body of the act, and where the subject as set forth in the body of the act is not named as a subject in the title. We would have a very different case had the title read "An act to increase the revenues of the state and changing and increasing the boundaries of the counties of Billings, Stark and Mercer." Then, clearly, the title would have expressed two subjects; and, if the first was in no manner mentioned in the body of

the act, it might be rejected as surplusage, and the act as thus framed would not be vulnerable to the criticism that the subject of the act was not expressed in the title. But such was not the case. The change in the boundary lines was named simply as the means for the accomplishment of the main object of the act; *i. e.* the increase of the state revenues. This title was evidently the subject of some consideration. Had it been entitled simply an act to increase the boundaries of the counties named, not being a general law applicable to all the counties in the state, it would at once have met the objection—whether valid or not—that the change of boundaries of each county was a subject by itself, and hence the act violated the first provision of section 61 of the constitution. But by making the increase of state revenue the one subject and the change of boundaries simply the instrumentalities, that objection was avoided. Again, the members of the legislature and the people generally knew that the counties mentioned were situated in the western and grazing portion of our state. If the revenues of the state could be increased by increasing the boundaries of those counties,—and such was the promise in the title of the act,—the legislators as well as the people generally would be pleased to have it done, because it would bring the added revenue, without any increase of their burdens. But, if the act were simply to increase the boundaries of such counties, the act would present no such inducements to its passage. It has not been the custom in this state to create counties—as two of these would be under this act—180 miles in length. The fact that the act would necessarily increase the revenues of the counties named might not be a sufficient inducement for the creation of any such unwieldy municipalities. We think the title to the act in question is dangerously misleading, and presents a forcible instance of one of the evils which this constitutional provision was intended to prevent. In each case where this provision has been before us, we have held that it was mandatory alike upon the legislature and the courts, and, when the violation of the provision by the legislature is too plain to admit of doubt, we are reluctantly compelled to correct it. The order sustaining the demurrer is reversed, and the District Court is directed to enter an order overruling such demurrer. Reversed. All concur.