STATE v. ROBERT H. EDWARDS and Others.[1]

February 17, 1905.

Nos. 13,997—(20).

**Report to Consignor of Grain Sold.**

Section 2, c. 225, p. 246, Laws 1899, requires a commission merchant, duly licensed to sell grain on commission, to render a true statement to the consignor within twenty four hours of making a sale, showing the grain sold, price received, name and address of purchaser, and the date, hour, and minute when sold, with vouchers for charges and expenses. *Held:* This law contemplates an actual purchaser, other than the consignee, and the purchase by him of such grain, after close of business hours, at the highest price of the day upon the board of trade, is not a sale within the meaning of this act, and a report of such sale to the consignor is not a compliance with its provisions. If the consignee makes such purchase and subsequently sells the same at an advance, such sale inures to the benefit of the consignor, and a failure to return to him a true statement, as provided, constitutes a violation of the law.

**Purchase by Consignee.**

The consignor is not estopped from repudiating a purchase of grain by his consignee, unless he acquiesces therein and ratifies the same after being fully informed of the entire transaction, including a subsequent sale at a profit.

**Criminal Complaint—Intent.**

The statement in the criminal complaint that defendants wilfully and unlawfully made a false report is immaterial. The penalty is imposed for a failure to render the report as provided, irrespective of intent, and it is immaterial that the consignee acted in good faith and in accordance with the custom of commission merchants in that locality.

**Interstate Commerce.**

Chapter 225, p. 246, Laws 1899, is constitutional, and not in conflict with the federal constitution as an interference with interstate commerce.

Appeal by defendants from an order of the municipal court of Duluth, Windom, J., denying a motion for a new trial, after a trial and conviction of the offense set forth in the opinion. Affirmed.

[1] Reported in 102 N. W. 697.

94 M.—15

*Alexander Marshall* and *Warner E. Whipple,* for appellants.

*W. J. Donahower,* Attorney General, and *Washburn, Bailey & Mitchell,* for the State.

LEWIS, J.

Upon the complaint of Charles F. Staples, a member of the State Railroad & Warehouse Commission, defendants, commission merchants doing business at Duluth, were charged with having violated the provisions of section 2, c. 225, p. 246, Laws 1899, in failing to render a true statement to the consignor concerning a consignment of flax. A plea of not guilty was entered, and the trial resulted in a verdict of guilty. The case is brought here upon appeal by defendants from an order denying their motion for a new trial.

It is undisputed that the consignor, Victor Carlson, resided at Hallock, Minnesota, and shipped a carload of flax to defendants at Duluth, to be sold by them on commission; that the car was shipped from Hallock, January 14, over the Great Northern Railroad, reaching Duluth January 19, 1903. Carlson made a draft upon defendants for $700, attached the bill of lading, and sent it through a bank for collection. The flax was inspected January 19 at Duluth, and was ready to be sold upon the market that day. The evening of January 19 defendants wrote consignor the following letter:

Duluth, Minn., Jany. 19th, 1903.

Mr. Victor Carlson,

　　Hallock, Minn.

　　Dear Sir:—We have received the following car of flax from you today, which inspected and sold (subject to comparison with sample) for your account and risk as stated below:

| Car No. | Initial | Grade | Sold at | How sold |
|---|---|---|---|---|
| 21048 | G. N. | No. 1 Flax 14% | 119½ | |

The market was a very narrow one all day and above was best price. Acct. sales & check to balance will follow as soon as unloaded. Trusting same is satisfactory, and awaiting your further orders, we remain,

　　　Yours truly,

　　　　　Edwards, Wood & Co.,

　　　　　　Geo. K. Taylor, Mngr.

January 22 the following account was rendered:

Duluth, Minn., Jan. 22nd, 1902.

Account sales of Edwards, Wood & Co., Grain Commission Merchants, 310 Board of Trade.

Account of Victor Carlson,

Hallock, Minn.

| Date Unloaded | Car | Grade | Freight | Date Sold | Gross Weight |
|---|---|---|---|---|---|
| Jan. 21 | 21048 | Flax | 83.34 | 1–19 | 980.10 |
| | | No. 1 14% | | | |

| Shrinkage by cleaning | Net Weight Delivered | Price | Amount |
|---|---|---|---|
| 137.12 | 842.54 | 119½ | $1007.33 |
| | 75 | | |

| | | |
|---|---|---|
| Freight and Inspection............................ | $83 09 | |
| Weighing ........................................ | 25 | |
| Interest ......................................... | | |
| Insurance ....................................... | 40 | |
| Commission ½% ................................. | 5 04 | 88 78 |
| | | 918 55 |
| | | 700 00 |
| Balance to your credit............................ | | $218 55 |

January 20, defendants sold the carload of flax to the Hall Elevator Company at Duluth at $1.20 per bushel, an advance of one-half cent, but of this sale made no report to consignor. Defendants claim the sale was made to themselves at the close of the business day, January 19, and that the letter of that date, and the account stated, of date January 22, constituted a report of the transaction within the requirement of the statute. Defendants further claim that there was a subsequent ratification of the transaction by the consignor.

At the trial, the court instructed the jury that, when grain is consigned to commission merchants to be sold upon commission, it is their duty to sell it in the open market for the best obtainable price, and remit to the shipper the amount of the sale, less commission and necessary disbursements; that commission merchants have no right, when grain has been consigned to be sold on commission, to themselves purchase it, and that an attempt so to do is not binding upon the shipper; that if such an attempt is made, and thereafter the grain is sold to

an actual purchaser, the law requires the commission merchants to make a true report of the amount received at the sale to the actual purchaser within twenty four hours thereafter; and, further, that, if the jury found from the evidence that the car in question was consigned to defendants to be sold on commission, then defendants had no right or authority to themselves purchase the grain, and any such attempt at purchase would not relieve them of the positive duty to report to Carlson the sale to a subsequent legal purchaser.

The court refused to instruct the jury, upon request of defendants, to the effect that they were not guilty if the jury should find that the duly authorized agent of defendants sold the carload of flax to them, paying therefor the highest market price of that date, and duly reported the same to the consignor within twenty four hours thereafter. The court also refused to instruct the jury that if such sale was made to defendants in accordance with the usages and customs of the Board of Trade at Duluth, at the highest price obtainable on that day, and duly reported the same to the consignor within twenty four hours thereafter, and the consignor did not within a reasonable time thereafter repudiate the transaction, then such act would constitute ratification by the consignor.

Error is also assigned in refusing defendants' offer to prove it was the custom among members of the Duluth Board of Trade to purchase for themselves consignments of grain shipped to them to be sold upon commission at the highest market price for the day, in the event that other purchasers could not be obtained. The instruction of the court to the following effect is also questioned:

> The offense charged is that of omitting to perform a positive duty enjoined upon commission merchants by the law of the state, and it is immaterial whether the defendants actually knew anything about the transaction, if the grain was shipped to them to be sold upon commission, and was sold by them, or by any authorized person acting for them, on commission.

Section 1, c. 225, p. 245, Laws 1899, defines the purpose of the act, and declares it to be unlawful to do business without procuring a license and giving a bond for the benefit of persons intrusting commission merchants with consignments; that, if such commission merchant re-

ceive grain for sale on commission, the bond shall be conditioned that he faithfully account and report to all persons intrusting him with grain for sale, less commission and disbursements; and that, if he does not receive grain for sale on commission, the bond shall be conditioned upon the faithful performance of his duties as such commission merchant. The record shows that defendants were duly licensed to sell grain, exclusive of other agricultural products and farm produce, on commission at Minneapolis and Duluth, and that they duly executed and delivered their bond, as provided by law, conditioned to faithfully account and report to all persons intrusting them with grain to be sold on commission, less commission earned and actual disbursements.

The law does not prohibit defendants from engaging in the business of directly buying and dealing in grain, but, so far as shown, they did not take advantage of that privilege and take out a license for that purpose. Having held themselves out as commission merchants to sell grain on commission, defendants entered into an obligation to use their knowledge and position in disposing of the grain for the greatest benefit of their patrons, and were required to take all reasonable and usual means and precautions to dispose of the grain to the best advantage of the consignor immediately upon its arrival; and if for good reason they failed to dispose of it on the day of its arrival, and it was necessary to sell it at private sale after business hours of the board of trade, or to carry the grain over the day, the same duty followed them, and they were still required to exercise reasonable diligence on behalf of the shipper. They could not shift such responsibility by bidding in the property for themselves after business hours, and subsequently turn it over to some one else at a profit, and not be held accountable therefor. The record conclusively shows that on the following day the car of flax, without being unloaded, was disposed of by defendants to the Hall Elevator Company at an advance of one-half cent a bushel. Under the law of agency such sale inured to the benefit of defendants' principal, and the attempted sale to themselves, as testified to by their agent, was prima facie a nullity.

We cannot accept as applicable to this case the proposition that, if the shipper made no protest after receiving the report of the alleged sale and the proceeds thereof, he thereby accepted and ratified the sale. On the other hand, it was the duty of defendants to clearly show that

the shipper not only knew the same was made to themselves, upon which point the report of sale is silent, but that he also knew that subsequently defendants sold the flax at an advanced price, and, being possessed of all these facts, he accepted the proceeds of the sale to defendants as final, and waived his right to profits on account of the subsequent sale. In this respect the evidence entirely fails. Conceding there is evidence tending to show that the manager, Taylor, sold the flax to defendants and made a report thereof, the evidence fails to show that the consignor ever accepted the transaction after being put in full possession of all the facts.

The complaint charged that defendants wilfully and unlawfully neglected and failed to render the statement within the time required, but, on the contrary, wilfully and unlawfully made and rendered to the consignor a false report and statement in writing, in and by which they pretended and represented they had sold the flax for the sum of $1,007.38, whereas in fact they sold it for $1,011.54. The gist of the offense is one of omission in failing to render a true statement to the consignor showing what portion of such consignment had been sold, the price received, and the name and address of the purchaser, the date, hour, and minute when such sale was made, with vouchers for all charges and expenses paid or incurred; and defendants were put on trial upon that charge, and none other. The statement in the complaint that they wilfully made a false report was unnecessary, and mere surplusage.

Upon the trial, however, in support of the offense charged, it was proper to prove what reports were made, and that such reports were not those required by law. Defendants' business was conducted through their local manager, and, it may be admitted, were acting in good faith, in accordance with the custom of commission merchants in Duluth, and the agent may in good faith have been endeavoring to comply with the law in making the stated reports, but the question of good faith or intent is not involved in this action. If, under such circumstances, a sale to themselves was unauthorized and prohibited, defendants could not avoid the effect of the statute in failing to report the sale which they did make, no matter what their intentions may have been.

In State v. Robinson, 55 Minn. 169, 56 N. W. 594, it was held that the owner of a drug store was not liable for a sale by one of his clerks,

not a registered pharmacist, and made without his knowledge or assent. Here, however, that principle has no application. Taylor was defendants' general manager, and the only person in charge of the Duluth office, and was held out to the world as their representative to transact their business, and no claim was made at the trial that he was not authorized to do the very things which he did. On the contrary, it was insisted that his attempted purchase of the flax was justified under the law and was in accordance with the general custom.

In this connection the case of State v. O'Connor, 58 Minn. 193, 59 N. W. 999, may be considered, wherein it was held that, in order to excuse himself from liability for permitting a saloon to be kept open on Sunday, the master would have to show that it was opened against his will, and notwithstanding all reasonable efforts by him to keep it closed. The question of intent is not material in this class of statutory offenses. As remarked by Judge Cooley in People v. Roby, 52 Mich. 577, 18 N. W. 365, such statutes are in the nature of police regulations, and impose a penalty irrespective of intent to violate them, the object being to require a degree of diligence for the protection of the public which shall render violations impossible. The statute makes the act criminal without regard to intent. State v. Heck, 23 Minn. 549.

For the reasons already stated, it was immaterial that it was the custom among commission merchants at Duluth to buy grain at the highest figure for the day, in case not sold on the market. They could not make that lawful which was unlawful, and it was just such irregularities that the statute was intended to correct.

The law under consideration is assailed upon the ground that it is in violation of the federal constitution, as an interference with interstate commerce. In State v. Wagener, 77 Minn. 483, 80 N. W. 633, 778, 1134, this law was declared to be not in conflict with the fourteenth amendment of the federal constitution, nor with section 2 or 7, article 1, of the state constitution. The court at that time, after exhaustive argument, put at rest all of the questions touching upon the constitutionality of the law, except possibly an intimation that the statute did not apply to interstate business, but what was stated in the opinion on that point was by way of precaution or reservation only.

In the case before us, the consignor resided within the state, but, to our minds, that fact is not significant. The law applies to all shipments,

from beyond as well as within the state. The object of the statute is to protect the public in its dealings with commission merchants against an infringement upon the rights of shippers of grain. Indeed, the law might be open to the objection of an unjust discrimination were its benefit conferred only upon the citizens of the state. The question of transportation is not involved. It is immaterial from whence the grain is shipped, over what route or through what states it travels to the point of destination. The provisions involved in this case take no account of the grain as an article of commerce until it has been sold, and, even then, only to require the consignee to make a true report of the transaction within a reasonable time. The subject-matter of the law as applicable to this case no more relates to interstate commerce than the criminal statutes which protect grain from larceny after arrival within the borders of the state. If it be an interference with the prerogative of Congress to require commission merchants to make a true report of their dealings with citizens of Dakota or Wisconsin for their protection, why is it not equally an interference with interstate commerce when our criminal laws are put in force to arrest and punish for the larceny of such grain upon arrival within the borders of our lines? We fancy there is no crying demand on the part of the citizens of our sister states to be excluded from the benefit of these protective measures.

This cause was submitted to the jury upon the right theory, and we find no error in the instructions or rulings.

The order appealed from is accordingly affirmed.