(114 N. W. 371.)

---

THE STATE OF NORTH DAKOTA v. THE MINNEAPOLIS AND NORTH-
ERN ELEVATOR COMPANY.

Opinion filed Jan. 18, 1908.

**Constitutional Law — Title of Act.**

    1. Chapter 113, p. 167, of the Laws of 1907, which is entitled "An act requiring elevator companies transacting business in this state to return certificates of inspection and weighmaster's certificate of weight to the local buyer," and which provides for the return of such certificates by the elevator companies, etc., to their local agents, and also that the latter shall post the same in a conspicuous place in the elevators, does not contravene section 61 of the state constitution,

which requires that no bill shall embrace more than one subject, which shall be expressed in its title. The subject or object of the act is to furnish information to the public of the facts which such official certificates will impart, and the provisions of section 2 (page 168) requiring local agents to post such certificates in their elevators are germane to the provisions of section 1, and hence to the subject embraced in the title of the act.

**Same — Interstate Commerce Clause — Warehouse Regulation.**

2. Such act is not vulnerable to the objection that it contravenes the provisions of the interstate commerce clause of the federal constitution, as its operation will not directly or remotely interfere with interstate commerce; but its enactment is a legitimate exercise of the police power of the state.

**Foreign Corporations — Regulation by States — Criminal Prosecution.**

3. Appellant's contention that the law is void, because it attempts to make acts or omissions committed in a foreign state a crime in this state is not sustained. The conditions on which foreign corporations are permitted to do business in this state are within the legitimate power of the state to prescribe, and defendant corporation, having been authorized to transact business in this state, is amenable to its laws enacted under its police powers to the same extent as its citizens.

Appeal from District Court, Cass county; *Pollock, J.*

The Minneapolis & Northern Elevator Company was convicted of violation of the elevator law, and appeals.

Affirmed.

*Ball, Watson, Young & Hardy,* for appellant.

*T. F. McCue,* Attorney General, *R. N. Stevens,* Assistant Attorney General, *W. H. Barnett,* State's Attorney, and *Seth Richardson,* Assistant State's Attorney, for respondent.

FISK, J. The defendant and appellant was convicted in the district court of Cass county for the violation of the provisions of chapter 113, p. 167, of the Laws of 1907, and a judgment was rendered imposing a fine against it in the sum of $100, from which judgment this appeal is prosecuted.

This statute is as follows:

."An act requiring elevator companies transacting business in this state to return certificate of inspection and weighmaster's certificate of weight to the local buyer.

"* * * Every elevator company, corporation, co-partnership or association of individuals, operating any elevator, building or place in this state for the purchase, storage, or deposit of any grain or other farm commodity, shall return to the local buyer at the place where such grain or other farm commodity is purchased, stored or deposited, the official certificate of inspection, together with the weighmaster's certificate for any such grain or other farm commodity sold, whether said grain is sold in this state or in any foreign state where such grain is weighed and inspected. * * * It shall be the duty of the local buyer or agent of the elevator company or other association enumerated in section one of this act, to post in a conspicuous place in such elevator building or place, the official weighmaster's certificate, and the official in-spector's certificate, and have the same at all times so that the public may inspect the same. * * * The elevator company or other association enumerated in section one of this act, shall forthwith upon the sale of each car or part of car of grain or other farm commodity, return the certificates provided for in this act. * * * Any elevator company, corporation, co-partnership, or other association of individuals, or any person who shall violate any of the provisions of this act, shall be guilty of a misdemeanor and all right to transact any business in this state shall be forfeited."

A demurrer to the information was interposed upon the ground, as stated in such demurrer, "that it appears upon the face thereof that the facts stated therein do not constitute a public offense, in this: (1) That the act under which the information is drawn is void in its entirety; (2) that said act is void so far as the same applies to the facts set out in the information." The material facts alleged in the information, and which are admitted by the demurrer to be true, are, in substance, as follows: That defendant is a foreign corporation duly authorized to operate a line of elevators or warehouses in this state, and as such it had an elevator at Argusville, in said county, with an agent in charge, which was on May 27, 1907, and prior thereto used by it for the purpose of receiving and storing grain for others and also grain purchased by it; that on said date defendant, having on hand in said elevator certain flax which it had purchased from farmers in that vicinity, shipped the same to Duluth, Minn., where it sold said grain; that the same was regularly inspected and weighed by the state inspector of the state of Minnesota; and that defendant has failed, neg-

lected and refused to return to its said agent at Argusville an official certificate of the inspection and the official weighmaster's certificate of the weight of the grain so sold by it.

No question is raised by appellant's counsel as to the sufficiency of the facts alleged in the information to constitute the crime defined by said statute, although there are no allegations therein that any official certificates such as are mentioned in the statute were ever in fact issued and delivered to defendant, or that under the laws of Minnesota there is any provision or requirement for the issuance and delivery of such certificates. The necessity for such allegation is to our minds quite apparent. In view, however, of the fact that no such question is raised by the demurrer, we will dispose of the appeal solely upon the grounds urged in appellant's printed brief. But two errors are assigned, and they relate to the same question, to wit, the validity of the act in question; it being appellant's contention, first, that said act is void in its entirety, and, second, that it is void at least so far as it applies to the facts alleged in the information. If either contention be sound, it was error to overrule the demurrer, and the judgment appealed from must be reversed. In disposing of appellant's contention, we must be governed by certain well-established rules of statutory construction, among which are the following: A statute will not be declared unconstitutional unless in plain violation of some constitutional provision. Every presumption is in favor of the validity of a statute, and in case of a reasonable doubt as to its constitutionality it is the duty of a court to sustain it. A statute will be construed, if possible, in harmony with the constitution, and a part may be unconstitutional and the remainder valid, provided the invalid part is so independent of the remainder that it may be eliminated without rendering ineffective the entire statute, unless the invalid portion was evidently the inducement for the enactment of the remainder; but where a law is so emasculated by the elimination of invalid portions that it cannot be said that the legislature would probably have enacted the law in its form as thus emasculated, if it had known that the portions thus eliminated were unconstitutional and void, the whole law must fall. The prime object sought in the construction of a law is to ascertain as far as possible and render effectual the legislative will. The wisdom or policy of a law and the motives which prompted its enactment by the legislature are matters with which the courts have no concern. Keeping in mind

these rules for our guidance, we will dispose of appellant's points in the order in which they are discussed in the brief.

First. It is asserted that the entire act is void because it contravenes the provisions of section 61 of the state constitution, which requires that a bill shall embrace but one subject, which shall be expressed in its title. The argument, in brief, is that sections 1 and 2 each relate to different subjects; the first to the duty enjoined upon elevator companies to transmit to their local agents the official certificates of inspection and weights, and the second to the duty enjoined upon the local agents to post such certificates. We are entirely clear that such contention is without merit. It is manifest that the act embraces but one subject or object, to wit, the furnishing to the public such information as may be imparted by the posting in the elevators of the official certificates mentioned in the act. In furtherance of this general design, section 1 requires such certificates to be transmitted by the elevator company to its local agent, and section 2 requires the latter to post and keep posted such certificates in a conspicuous place in the elevator. It is thus apparent that these two sections are closely related to the subject-matter of the act. In fact, the provisions of one wuold be rendered abortive without the other. The fact that the title of the act is somewhat restricting in its terms does not render the act void, as the provisions of section 2 which are not expressly referred to in the title are, we think, clearly germane to the subject matter embraced in the title. A reading of the title readily suggests that the body of the act might contain provisions similar to those embraced in section 2; for, without any requirements other than those expressly mentioned in the title, the act would accomplish no useful purpose. This court has so often and so recently passed upon the questions relating to the construction and purpose of the constitutional provision aforesaid that we deem it unnecessary to do more than refer to such decisions. They are the following: State v. Burr (N. D.) 113 N. W. 705; Elevator Co. v. Pottner (N. D.) 113 N. W. 703; State v. Woodmansee, 1 N. D. 246, 46 N. W. 970, 11 L. R. A. 420; State v. Haas, 2 N. D. 202, 50 N. W. 254; State v. Nomland, 3 N. D. 427, 57 N. W. 85, 44 Am. St. Rep. 572; Divet v. Richland Co., 8 N. D. 65, 76 N. W. 993; Richard v. Stark Co., 8 N. D. 392, 79 N. W. 863; State v. Home Society, 10 N. D. 493, 88 N. W. 273; Power v. Kitching, 10 N. D. 254, 86 N. W. 737, 88 Am. St. Rep. 691. For a very recent treatment of this subject, together with

citations of numerous recent decisions in other jurisdictions, see 6 Current Law, 1531-1535. We accordingly hold that the act in question does not contravene the provisions of section 61 of the constitution.

It is next contended by appellant that the act is void as an unlawful interference with interstate commerce. Our attention is directed to section 8 of the federal constitution, which is familiar to all, and which provides that "Congress shall have power * * * to regulate commerce with foreign nations and among the several states and with the Indian tribes," and we are asked to hold that the statute in question violates this section. As appellant's counsel state, this provision of the federal constitution "has been construed and applied in so many cases that its scope and meaning are no longer debatable. It operates as an effective prohibition upon the states against all interference by legislation with interstate commerce, and it is well settled that whatever constitutes a burden upon interstate commerce, whatever form it may take, is prohibited." This statement, to be strictly accurate, should be qualified to the extent that the interference which is thus prohibited is a direct and substantial interference, as distinguished from an indirect interference. The crucial question is, therefore, whether the act aforesaid in its proper application will operate to directly interfere with commerce between the states. We freely admit that such would be its effect if the construction contended for by appellant's counsel is sound. The claim is made by them that the act by its express terms applies to all shipments and sales of grain made in this or in any other state, regardless of the fact whether such shipments are made to points where there are official inspectors and weighmasters or not. If such is the necessary or proper construction to be given this statute, we should have no hesitation in pronouncing the same unconstitutional and void, as being an unreasonable and direct interference with interstate commerce. We do not agree, however, to this construction. We must, if possible, construe the act so as to give effect to the legislative intention, and at the same time uphold the law as a valid enactment. To say that the legislature intended to require shipments and sales to points only where there are official inspectors and weighmasters, which is the logical result of appellant's contention, seems to us a strained and unwarranted construction. While the meaning and purpose of the law is somewhat obscure, we think by a fair and

reasonable construction thereof it discloses that the legislative purpose was to require the return of the official certificates only in cases where in the due and regular course of business such certificates are issued and delivered to the elevator company. As thus construed, we see no constitutional objection to the enactment and enforcement of such a law.

A somewhat analogous question was recently before the Supreme Court of Minnesota in State v. Edwards, 94 Minn. 225, 102 N. W. 697, 69 L. R. A. 667. In that case it was held that a statute requiring grain commission merchants to make a report to the consignor within twenty-four hours after the sale is not an interference with interstate commerce. The court there said: "The provisions involved in this case take no account of the grain as an article of commerce until it has been sold, and even then only to require the consignee to make a true report of the transaction within a reasonable time. The subject-matter of the law as applicable to this case no more relates to interstate commerce than the criminal statutes which protect grain from larceny after arrival within the borders of the state. If it be an interference with the prerogative of congress to require commission merchants to make a true report of their dealings with citizens of Dakota or Wisconsin for their protection, why is it not equally an interference with interstate commerce when our criminal laws are put in force to arrest and punish for the larceny of such grain upon arrival within our lines?" It was also held in Atlantic Coast Line R. Co. v. Commonwealth, 102 Va. 599, 46 S. E. 911, that "under its police power a state may reasonably regulate the relative rights and duties of all persons or corporations within its jurisdiction, though incidentally affecting interstate commerce." The court there sustained certain rules relative to storage and demurrage, adopted by a commission. We quote: "The questions raised on this appeal, which have been discussed at length and very ably, * * * are of great importance. They involve the right of the state, under its reserve power, whether that power be called police, governmental or legislative, to regulate the relative rights and duties of persons and corporations within its jurisdiction, so as to provide for the public good and the public convenience by laws which are not inconsistent with the constitution of the state, and which do not, by their operation, directly intrench upon the authority of the United States, or violate some right protected by the federal constitution. * * * The validity of the

rules and regulations in question, so far as they apply to intrastate commerce, is not denied; * * * but it is insisted that they are wholly invalid, so far as they apply to interstate commerce, * * * , upon the ground that that subject is wholly within the jurisdiction of the federal government. That this contention is not true to the extent claimed is well settled by numerous decisions of the Supreme Court of the United States"—citing and quoting from Lake Shore, etc., R. Co. v. State of Ohio, 173 U. S. 285, 297, 19 Sup. Ct. 465, 43 L. Ed. 702, and other cases too numerous to mention.

We are unable to preceive how the necessary effect of the act in question would be to directly, or even remotely, interfere with interstate commerce. It is well settled that a state statute requiring inspection of property, the subject of interstate commerce, does not violate the commerce clause of the federal constitution. Patapeseo Guano Co. v. Board of Agriculture, 171 U. S. 345, 354, 361, 18 Sup. Ct. 862, 43 L. Ed. 191; Territory v. Denver & R. G. R. Co., 12 N. M. 425, 78 Pac. 74; Globe El. Co. v. Andrews (C. C.) 144 Fed. 871, 880; State v. Edwards, supra. In Globe El. Co. v. Andrews, supra, Judge Sanborn, after citing numerous decisions of the Supreme Court of the United States, says: "Under these precedents, it seems clear that the Wisconsin legislature might lawfully prevent fraudulent changes of grades, arbitrary or fraudulent 'dockage' practiced by warehousemen, and shipping out at a higher grade than that on which the grain was taken in. Such regulations would be in aid and furtherance of commerce, by protecting the rights of both buyer and seller. Thus many objections to the Minnesota system, and frauds practiced under it, might be cured. Such regulations, although indirectly affecting interstate commerce, would be wholly local in their character, and would undoubtedly be sustained. Such regulations might even include inspection and weighing for the purpose of detecting and punishing fraud, preventing changes of grades, fraudulent dockage, storage and resale on the weights found before such dockage occurred, etc. All this would be local regulation, to protect the public from fraud and imposition, and as such would not be unlawful regulation of interstate commerce." Inspection laws being constitutional, as a legitimate exercise of the police power of the state, it is entirely clear that a law requiring the result of such inspection to be made public is also constitutional. We must therefore overrule appellant's second contention.

His third and last contention is "that the act is void in so far as it attempts to make acts or omissions committed in a foregn state a criminal offense." There is no merit in such contention. The assumption that the offense was committed in Minnesota is not true. The statutory offense consists in defendant's failure to deliver to its agent in this state the official certificates aforesaid. The defendant corporation, having been authorized to transact business in this state, is amenable to its laws enacted under its police power to the same extent as its citizens; and, furthermore, it is within the legitimate power of the state to prescribe the conditions upon which foreign corporations may be permitted to transact business within its borders.

We conclude, therefore, that the act in question is not vulnerable to any of the attacks made upon it, and it follows that the judgment appealed from was correct, and should be affirmed. It is so ordered. All concur.