# McKONE et al. v. CITY OF FARGO.

## (138 N. W. 967.)

**Public improvements — action to set aside assessments — limitation of actions.**

An action to set aside a special assessment levied on lots to defray paving
expense, where the assessment was apportioned to the property by the city
special assessment commission and confirmed by the city counsel, and there-
after spread upon the tax lists, and more than six months having elapsed from
the date of such approval and confirmation of the assessment by the city coun-
cil without the commencement of an action to set aside the assessment for
irregularities, it is *held*:

(1) That such an action begun after the expiration of six months from the
date of such confirmation is barred from being maintained by the statute of
limitations contained in § 2790, Rev. Codes 1905, § 155 of chap. 62, Ses-
sion Laws of 1905, providing that "no action for either of said purposes shall
be maintained unless it is commenced within six months after such special
assessment is approved."

(2) Such statute imposing a six months' period of limitation within which
to commence actions to set aside assessments is valid and enforceable, and
is here applicable, notwithstanding that the title of the act specifically re-
ferred to the vacation of assessments made prior to its passage.

(3) On rehearing § 155 of the Session Laws of 1905, as to the statute of
limitations concerning future assessments, *held*, not unconstitutional.

Opinion filed May 24, 1912.  On rehearing November 23, 1912.

---

Note.—On the question of laches in attack on special assessment upon the
ground that property is not benefited, see note in 36 L.R.A.(N.S.) 39.

Appeal by plaintiffs from a judgment of the District Court for Cass County, *Allen,* Special Judge, in defendants' favor in an action to set aside a special assessment levied for street paving.

Affirmed.

*Robinson & Lemke,* for appellants.

An assessment is void when it rests on the cost of the pavement, and not on special benefits to the property.

Cooley, Taxn. 3d ed. 1254; Johnson v. Milwaukee, 40 Wis. 324; Watkins v. Zwietusch, 47 Wis. 513, 3 N. W. 35.; Wells v. Western Paving & Supply Co. 96 Wis. 116, 70 N. W. 1073; Liebermann v. Milwaukee, 89 Wis. 336, 61 N. W. 1114; Hayes v. Douglas County, 92 Wis. 429, 31 L.R.A. 217, 53 Am. St. Rep. 926, 65 N. W. 483; Hanscom v. Omaha, 11 Neb. 37, 7 N. W. 739; State ex rel. Cunningham v. District Ct. 29 Minn. 62, 11 N. W. 135.

*Seth Richardson* filed an additional brief on rehearing in behalf of other parties similarly situated to these appellants.

*W. H. Shure,* for respondent.

Public officers charged with the duty of improving the streets of a city, and authorized to levy a tax therefor upon abutting property, have performed every duty in connection therewith at the proper time and in the proper manner. Phillips v. Sioux Falls, 5 S. D. 524, 59 N. W. 881.

Where an estimate has been made by the city engineer and referred to the city council, and the council acts upon the estimate, it is sufficient. Goodwillie v. Detroit, 103 Mich. 283, 61 N. W. 526; Madderom v. Chicago, 194 Ill. 572, 62 N. E. 846; 28 Cyc. 988.

An action to vacate and set aside a special assessment and enjoin the collection thereof will be barred, if not begun within the time prescribed by the statute. Loomis v. Little Falls, 176 N. Y. 31, 68 N. E. 105; Lennon v. New York City, 55 N. Y. 361; Wahlgren v. Kansas City, 42 Kan. 243, 21 Pac. 1068; Marshall v. Leavenworth, 44 Kan. 459, 24 Pac. 975; Union P. R. Co. v. Kansas City, 73 Kan. 571, 85 Pac. 603; Nixon v. Burlington, 141 Iowa, 316, 115 N. W. 239, 18 Ann. Cas. 1037; Brown v. Grand Rapids, 83 Mich. 101, 47 N. W. 117; State, Vanatta, Prosecutor, v. Morristown, 34 N. J. L. 445; State, Bogart, Prosecutor, v. Passaic, 38 N. J. L. 57; Byram v. Detroit, 50 Mich. 56, 12 N. W. 912, 14 N. W. 698; Atwell v. Barnes, 109

Mich. 10, 66 N. W. 583; Costantine v. Albion, 148 Mich. 403, 111 N. W. 1068; Farr v. Detroit, 136 Mich. 200, 99 N. W. 19; Powers v. New Haven, 120 Ind. 185, 21 N. E. 1083.

Goss, J. This action is a direct attack upon a special assessment levied for street paving. The property involved is lot 1 of block 16, and lot 14 of block 9, in Keney's and Devit's addition to Fargo. A special assessment of $1,356.98 for said purposes was levied and spread as a tax against each of said lots. Plaintiffs aver that "said levy and special assessment was made without any authority of law, and that in all things pertaining to the construction of said pavement and contracting for the same, and the making and filing of plans and specifications therefor, and the levy of said assessment and the pretended confirmation of the same, there was no compliance with the law." "That the cost charged against said property for such payment is confiscatory and is more than twice the amount which it adds to the value of said property." "The plaintiffs aver that under protest they have paid one tenth of the amount assessed against said property, and they are willing and ready to pay such further sum as may be just and equitable, and not in excess of the increased value of said property and the benefits to said property by reason of the construction of such pavement; and they do offer to pay in all 50 per cent of the cost of said pavement, which is in excess of any benefits to said property." The prayer for relief required defendants to set forth their adverse claims to the property, "that the validity of the same may be adjudged and determined and that said adverse claims may be adjudged void and confiscatory. And that the pavement assessment levied against said property be adjudged void on the owners paying one half of the sum without any interest, penalty, or cost." The answer detailed proceedings regularly had, including a petition for paving improvements; the granting of the same on a finding of necessity for said paving, preparation by the city engineer of plans, specifications, and estimate of the cost thereof, and its consideration and approval by the city council; the advertising for bids and the letting of the contract for construction of the paving according to said plans and specifications on file with the city auditor; the completion of said work and total cost thereof; the personal inspection by the city special assessment com-

mission and its determination in writing of the lots subject to assessment therefor and the benefits thereto, and the proportion based thereon assessable to each tract benefited; in which report and assessment each lot involved herein was reported as subject to assessment for $1,356.98, as based upon benefits of $2,035.47 accruing to each tract because of said paving; the fixing of a day for the review of said assessments and notice thereof to the property owners assessed, which date was February 27, 1909; the confirmation on said hearing had by the city special assessment commission of the assessment list as filed; notice by publication of such action, and that the city council would meet on April 5, 1909, at a place designated, to act further upon said list and hear any objections thereto, and its final confirmation and approval after notice on May 3, 1909; whereupon it was certified by the city auditor to the county auditor, and the assessment as made spread against all property assessed including these lots. That plaintiffs defaulted in appearing at any of said hearings, and made no objection of any kind to said proceedings until the commencement of this action on March 1, 1910, nearly a year after confirmation of the assessment. Defendants further plead that, because this action was not commenced within six months from May 3, 1909, the date of the final approval by the city council of said assessment, this action cannot be maintained. There is no denial of any of the foregoing matters alleged by answer.

On the trial no attack is made on the regularity of proceedings conferring jurisdiction upon the city council to act, and prior to letting of contracts. The plaintiffs assert that the city council lost "jurisdiction to make any assessment for two fundamental reasons, (1) the city council did not cause to be made and filed in the office of the city auditor the plans and specifications of the pavement giving all the details of the work to be done; (2) the second assessment was confiscatory, and was not based on special benefits to the lots." The above is quoted from appellants' brief, and is a summary of their contentions on the trial and on this appeal. The case below was tried with the object in view of setting aside or modifying special assessments because of defects in the plans and specifications upon which the contract was let and under which the work was done, and also because of irregularities thereafter occurring concerning the manner of the levy

of the assessments, in that the assessments are charged to have been based not on special benefits to the property correctly determined by the assessment commission, but instead, that the assessment commission arbitrarily apportioned the cost of the project between these and many other lots, and from the cost computed and assessed benefits by a method used of adding to the cost one half more than the tax the commission had previously determined the property should bear. In other words, that instead of the tax being determined proportionately from the special benefits to the property, the tax was arbitrarily assessed with reference to cost only. Plaintiffs have offered proof tending to sustain these contentions as to the method of the assessment board in determining special benefits and special assessments supposedly levied thereon as to this property and these assessments involved.

But plaintiffs are met at the threshold of the merits of this case with the established facts that the assessment had been fully made prior to, and confirmed and approved in, May, 1909, and this action was not commenced until March 1, 1910, the date of the summons. The city invokes the provisions of § 2790, Rev. Codes 1905, being § 155 of chap. 62 of the Session Laws of 1905, entitled "An Act for the Organization and Government of Cities and to Provide for the Limitation of Actions to Vacate Special Assessments Heretofore Made." The particular section of this act containing the statute of limitations here sought to be invoked against the maintenance of this action reads: "Whenever any action or proceeding shall be commenced and maintained before any court to prevent or restrain the collection of any special assessments, or part thereof, made or levied by the officers of any city for any purpose authorized by law, and whenever any action or proceeding shall be commenced and maintained as aforesaid to vacate or set aside any sale of real estate for such special assessment, or to cancel any tax certificate or deed given under such sale, and such assessment shall be held to be void by reason of noncompliance with the article, the court shall determine the true and just amount which the property attempted to be so assessed by said special assessment should pay," and enter judgment accordingly to have the force of a lien to be enforced by court action; "provided that no action for either of said purposes shall be maintained unless it is commenced within six months after such special assessment is approved, and, in case of such assess-

ment heretofore approved, within six months after this article takes effect." Can this action be maintained after the expiration of such six months' period of limitation? Plaintiffs claim the statute is not applicable, because of its title providing "for the limitation of actions to vacate special assessments heretofore made." Counsel remark: "Of course, the assessment in question was not 'heretofore made;' it did not precede the passage of the act, and so the limitation does not apply to this action," but state that "the special assessment was made under an act of 1905," the act in question. They quote in their brief §§ 142, 143, and 166 thereof, and seek to apply those provisions where they fit their side of the case, but deny the application of § 155, containing the six months' statute of limitations.

It is to be noticed that this is not a curative statute, but a statute of limitation of actions. It is couched in strong and unmistakable language: "That no action for either of said purposes shall be maintained unless it is commenced within six months after such special assessment is approved." Appellants do not challenge its constitutionality, so that is not before us. Neither is there any question of statutory construction involved. It is sufficient to set this statute of limitation running when two requisites exist, (1) a special assessment, and (2) its approval. With these existing; a lapse of six months bars the commencement of an action to assail the assessment. It is here conceded, both by the pleadings and the proof, that a special assessment was levied, but it is contended that it is void because of the manner of its levy, as not based upon specific benefits found. The assessment in question bears all the earmarks of a valid assessment. It purports to be based upon specific benefits. Both specific benefits and tax are stated in itemized amounts upon the tax list and are even specified to the cent with the utmost nicety. The regular statutory steps have all been taken. On the face then of proceedings the utmost of regularity apparently exists. Appellants now seek to go beyond the assessment altogether and impeach it by showing different special benefits than those recited in the levy, or the use of illegal methods in their determination. More than this, they seek to draw the inference from the levy on other lots that the levy made as to the two tracts in question is invalid. In this, as in their whole argument, a levy of special assessments against these two lots by the proper taxing power, and legal on the face of pro-

ceedings, is recognized and sought to be attacked after six months from its conceded approval. The assessment at most is but voidable, not void. Having all conditions named in the statute existing to set the statute in motion, we have the exact case before us for which it was intended to be applicable. If the statute does not here apply to bar the maintenance of this action commenced more than six months after approval of these special assessments, it never has application to any case.

Counsel for appellants cannot maintain but that such statutes are valid and enforceable. We quote from 1 Page & Jones on Taxation by Assessment, § 141: "Statutes are frequently found which require that objections to assessments must be made within some short space of time, and that if not so made they shall be deemed to have been waived. Such statutes are usually held to be valid if the time given is sufficient to enable the property owner to present his objections fairly. Thirty-day limitations have been upheld as in cases of assessments for street improvements or for sewers. A three-day limitation has been upheld, even where on account of sickness the property owner was not able to file his remonstrance within the time limit. Such restrictions are held in some jurisdictions to apply to constitutional questions, as well as to failure to comply with statutory requirements, while in other jurisdictions it is held that they cannot apply to constitutional questions." To the same effect, see Hamilton on the Law of Special Assessments, §§ 530 & 531, from which we quote: "The legal truism that the statute of limitations does not run against a municipal corporation acting in the discharge of the public duty has no application to the commencement of actions at law or suits in equity begun against such corporations for violations of statutory duty in making assessments. The various statutes limiting the commencement of actions are applicable to and include these classes of cases." "A statute providing that 'no action to set aside special assessments, or to enjoin the making of the same, shall be brought, nor any defense to the validity thereof be allowed, after the expiration of thirty days from the time the amount due on each lot or piece of ground liable for such assessment is ascertained,' being within the jurisdiction of the legislature, is not such a restriction upon the rights of litigants as calls for interference on the part of the courts, if the prior proceedings are sufficient to confer jur-

isdiction upon the corporate authorities to proceed." The above quotation from such treatise on special assessments recites the Kansas statute, and for proof of its application according to its terms, see Leavenworth v. Jones, 69 Kan. 857, 77 Pac. 273; Kansas City v. Gibson, 66 Kan. 501, 72 Pac. 222; Wahlgren v. Kansas City, 42 Kan. 243, 21 Pac. 1068; Topeka v. Gage, 44 Kan. 87, 24 Pac. 82. We quote the following from the opinion in the last named case: "The language of this statute is such as to leave little or no room for construction. Its provisions are plain, direct, and positive, and seem sufficiently broad to cut off all defenses not asserted within the period of time named therein." "And if the legislature was providing a special statute of limitations different from that of the general statute, we must presume that they intended it to have the effect they said it should have, and cut off all defenses of whatever kind or character. This may be a harsh rule, but that fact does not furnish a reason why we should not construe the statute as it is, though it may furnish a reason why the legislature should modify it." This is that court's opinion of a statute granting but one sixth the period of time within which to commence action allowed in ours. Wisconsin has a similar statute with one year as the limitation period. See § 1210h, Wisconsin Revised Statutes of 1898, and as an example of its application, see Hamar v. Leihy, 124 Wis. 265, 102 N. W. 568, an action brought after the one-year period to foreclose a tax certificate, to which a defense of irregularity was sought to be interposed, and which the trial court on the proof made found to be a defense. On appeal the judgment was reversed, the court holding the statute of limitations to bar interposition of such defense, and that "the court below erred in admitting evidence tending to show that no valid assessment had been made, and in entering judgment setting aside and canceling the tax and tax certificate." See also a similar statute providing a thirty-day period after issuance of bonds for street improvements, within which proceedings must be begun, or bonds issued be conclusive evidence of the regularity of all proceedings prior thereto, construed and enforced in Chase v. Trout, 146 Cal. 350, 80 Pac. 81, regarding which that court says: "The period of thirty days after the date of the warrant, within which the statute permits an owner to prevent the issuance of any bond by filing an affidavit and requesting that no bond be issued, gives a rea-

sonable time to the owner within which to make his election whether he will take advantage of the extension of time afforded by the issuance of a bond, or, by requesting that no bond be issued, preserve such rights as he may think he has to defeat the assessment for irregularity in the proceedings. The notices having been given, he is conclusively presumed to have knowledge of his right to so elect. It should not be forgotten that at the time the assessment becomes due other persons have valuable personal property rights at stake as well as the owner." "The fact that the conclusive evidence clause of the bond act arbitrarily fixes a period of thirty days after which defects which before may have been fatal are placed beyond inquiry does not make the law unreasonable."

We believe, therefore, that § 2790 quoted bars plaintiffs from maintaining this action. For this reason it is unnecessary to decide any assignments of error urged by plaintiffs. The judgment of the trial court is affirmed with costs.

## On Rehearing.

Goss, J. On petition of appellants a rehearing was granted on the sole question of the constitutionality of the part of § 155 of chap. 62 of the Session Laws of 1905, as purports to limit to six months from confirmation of the assessment the time within which to begin an action to avoid the same, which, if valid, prevents the maintenance of this action, said six-month period having expired before its commencement. This question was raised for the first time on petition for rehearing, and, although the rehearing was granted on this question alone, appellants in the additional brief filed have devoted but a small part thereof to the question of the constitutionality of the statute, and in the main have sought to reargue the case on the merits, which had already been decided in the opinion filed. The only matter now before us is the constitutionality of this limitation statute, upon which a brief has been filed in behalf of parties interested similarly to these appellants, though not before the court in this action, by attorney Seth W. Richardson, of Fargo.

Chapter 62 of the Session Laws of 1905 is entitled: "An Act for the Organization and Government of Cities and to Provide for the Lim-

itation of Actions to Vacate Special Assessments Heretofore Made."
It is a comprehensive act, and intended as in part a recodification of
the law applying to the organization and government of cities. It con-
tains over fifty pages of printed matter. That portion of § 155 of
said act, after referring to the commencement and maintenance of
actions to avoid taxes and special assessments, reads: "Provided that
no action for either of said purposes shall be maintained unless it is
commenced within six months after such special assessment is ap-
proved, and in case of such special assessment heretofore approved
within six months after this act takes effect." The title of the act,
so far as limitation of actions is concerned, refers only to those to va-
cate special assessments heretofore made; while the body of the act,
as to limitation of actions, covers specifically and definitely, under
separate classifications, special assessments approved after the passage
of the act and special assessments approved prior to the passage of
the act, the act as passed embodying an emergency clause. Counsel
claims the statute is unconstitutional as contravening the terms of §
61 of the Constitution, that "no bill shall embrace more than one sub-
ject, which shall be expressed in its title." This contention is based
upon the fact that the title of the act mentions only "the limitation
of actions to vacate special assessments "heretofore made;" and that the
act must be construed as applying only to assessments made heretofore,
that is, before the passage of the act, contending that, by the mention
of assessments "heretofore made," only such assessments are within
the purview of the act, and that such clause relating to assessments
heretofore made must be construed as a restrictive clause in the title,
and limiting the operation of the limitation statute to assessments
made prior to its passage, and thereby rendering unconstitutional, as
without the scope of the title so restricted, that portion of § 155 of
the act providing that the six months' statute of limitation might be
invoked as to actions begun to avoid taxes and assessments thereafter
assessed; and resulting in the contention that, as this assessment was
some years after the passage of this act, there is no valid statute of
limitation of actions barring attack on the special assessment in ques-
tion. If we grant appellants' objection urged, that, because the title
of the act refers particularly to assessments *heretofore made,* it is re-
strictive, we could easily arrive at his conclusion. But does it follow

that because the title mentions assessments "heretofore made," and does not specifically mention assessments to be levied in the future, that the latter are not properly included within the purview of the act, and it is unconstitutional?

The contention of the appellants is of necessity based upon the assumption that the clause of the title concerning past assessments is so restrictive of the balance of the title as to exclude any legislation concerning limitation of actions as to future assessments being included under the portion of the title relating to government of cities, and germane to such subject but for such alleged restrictive clause. The title of the act in the main specifies the general subject of government of cities, and such portion relating thereto is a general title. The clause of the title referring to one of the hundreds of different subjects that might or are included in the legislation under the general title has reference to one particular limited matter, limitation of actions as to past assessments, but is also germane to the general title. We have, then, a general title with a subtitle concerning one matter germane to the general subject, that of government of cities. The lesser, the subtitle, cannot be said to restrict legislation on any other subject than the limitation of actions concerning assessments. It is in no sense generally restrictive of the general subject, government of cities. This narrows the investigation on the point raised, then, to the question of whether this subtitle concerning past assessments shall be construed as restrictive to legislation concerning limitation of actions as to assessments both past and future, so as to exclude legislation upon future assessments, when such legislation, both future and past, is germane to and within the general subject, organization of cities, and covered by the general title. If it appears from the title of the act that no other reasonable construction can be given thereto than that such clause was intended to, and the legislation thereunder enacted to, restrict the statute of limitations to past assessments, and as negativing an intent that the body of the act shall contain legislation concerning limitation of future assessments, we must hold accordingly that the clause of the title mentioning past assessments is restrictive and exclusive, and voids that portion of the statute of limitations here involved. All necessary rules for the construction of the title and the determination of this question have been heretofore announced by the decisions of this court.

They have been summarized in an opinion by Morgan, Chief Justice, in Powers Elevator Co. v. Pottner, 16 N. D. 359, 113 N. W. 703, upon the construction of this provision of § 61 of the Constitution: "This section of the Constitution has been construed by this court in several cases. In those cases several principles have been laid down as guides in the construction of the section that should be applied in this case: (1) The law will not be declared unconstitutional on account of the defect, unless it is clearly so; (2) the title should be liberally construed, and not in a strict or technical manner; (3) if the provisions of the act are germane to the expressions of the title, the law will be upheld; (4) the object to be gained by the enactment and enforcement of the constitutional provision is to advise the legislature and the public of the substance of the act, and to prevent surprise, fraud, and the enactment of laws upon incongruous and independent matters under one title; (5) the section of the Constitution is mandatory upon the legislature and upon the courts." As applied to the determination of whether an act is void because of a restrictive title, this is not the first case in this state in which the foregoing rules have been applied, as they were followed in State v. Minneapolis & N. Elevator Co. 114 N. W. 482, 138 Am. St. Rep. 691, 17 N. D. 23, from page 26 of which we quote: "In disposing of appellant's contention, we must be governed by certain well-established rules of statutory construction, among which are the following: A statute will not be declared unconstitutional unless in plain violation of some constitutional provision. Every presumption is in favor of the validity of a statute, and in case of a reasonable doubt as to its constitutionality, it is the duty of a court to sustain it." And on page 27 of that opinion, the court says: "The fact that the title of the act is somewhat restricting in its terms does not render the act void, as the provisions of § 2, which are not expressly referred to in the title, are, we think, clearly germane to the subject-matter embraced in the title. A reading of the title readily suggests that the body of the act might contain provisions similar to those embraced in § 2," which case collects all the decisions of this state up to that time construing § 61 of our Constitution. As before stated, the title to this act is singular, as is the subject. The mere mention in a statute of particulars or branches of the subject, which are or may be germane to the general title or main purpose,

does not make the title or subject plural. 1 Lewis's Sutherland, Stat. Constr. § 131, concerning which the authority says: "In such cases the legislature is not limited to the particulars or details specified, but may enact any provision germane to the general title, unless the title is so worded as to show a clear intent to confine the act to the particulars mentioned." And the same authority further says: "The question cannot be determined by regarding the title alone, but the body of the act must be looked to; and if all the provisions of the act are fairly referable to one general subject, and that subject is expressed in the title, the act is valid." Applying these canons of construction, can it be said that beyond reasonable doubt the legislature intended by the latter clause of this title to restrict legislation to the particulars mentioned in such clause, to the exclusion of similar legislation concerning future assessments? And does the clause itself show a clear intent that the title shall be so restrictive? Is it not as reasonable to conclude the contrary, when we consider that, under the general title, had this subtitle not been affixed, the legislature could have enacted, without contravening § 61 of the Constitution, a statute of limitations, if reasonable and otherwise valid, concerning both past and future assessments, and that, with this in mind, the subtitle was probably annexed not to narrow the scope of the legislation on the matter mentioned in the subtitle, but to bring to the attention of the legislature that the statute concerned past legislation in this particular, presuming that legislation concerning future assessments might be covered without mention, inasmuch as all legislation, unless the contrary appears, is to be considered in the prospective and with reference to its application to future as distinguished from past events? If such a construction is as reasonable as that contended for by appellants, or if appellants' contention is in this particular not the only reasonable conclusion to be arrived at, the statute as to future assessments must be upheld under the foregoing authorities. Our conclusion is that to recognize the contention of the appellants' as the one here applicable would be to construe this general title as unreasonably restricted by a subtitle, and this too in the absence of any clear intent derivable from the title and the act itself that it should be so construed. We cannot adopt the theory of the appellants, which seems narrow, unreasonable, and unduly restrictive, and a construction which might jeopardize much legis-

lation, past and future, by the precedent that would hereby be established.

We consider none of the cases cited by appellants as contrary to our conclusions, or as supporting their position. To briefly refer to them, counsel cites Erickson v. Cass County, 11 N. D. 494, 92 N. W. 841; Richard v. Stark County, 8 N. D. 392, 79 N. W. 863; and State ex rel. Standish v. Nomland, 3 N. D. 427, 44 Am. St. Rep. 572, 57 N. W. 85. In the first case cited, the title of the act designated defendants as the parties against whom attorney fees should be allowed in final judgment on drainage cases, while the body of the measure, in direct conflict with the title, designated defendants as the parties entitled to fees to be recovered of plaintiffs. The holding is merely that the court refused to hold that the word "defendants" in the title of the act was inadvertently used, and that, as the subject-matter of the body of the act and of the title could not be harmonized, the act was void. No question, was there involved as here, of whether a subtitle restricts legislation under the general title in the particulars covered by the subtitle. In Richard v. Stark County, the substance of the holding was that a title, "To Increase the Revenues of the State by Changing or Increasing the Boundaries of the Counties of Billings, Stark and Mercer," could not be used as a subterfuge under which to accomplish the real object, that of a change of county boundaries and to increase the area of counties. Likewise, State ex rel. Standish v. Nomland is a holding that, "because the subject of the act is not expressed in the title," the act was void under the provisions of the Constitution under consideration. Megins v. Duluth, 97 Minn. 23, 106 N. W. 89, from Minnesota, wherein that court held the title of an act, requiring notice of claim to cities in actions for personal injuries received on the streets and highways, was not broad enough to include provisions in the statute itself relative to injuries other than personal injuries, was but drawing a distinction clearly outlined in the authorities concerning the subject-matter mentioned in the title of the act, and holding the legislation in the body of the act should be limited to the proper subject-matter. There is a well recognized distinction between claims for injuries received on highways by travelers and highway users, and claims for damage arising from consequential injuries to other persons than such users. The rule of law is that persons receiving consequential

injuries, as damages to abutting property occasioned by the repair of highways, are not covered by the legislation mentioned in the title of the act in Megins v. Duluth, concerning claims of damage to travelers because of obstruction to the highways, or injuries resulting therefrom because of the use of the street or highway for highway purposes. This case but recognizes a distinction already drawn in this state in Gaustad v. Enderlin, 23 N. D. 526, 137 N. W. 613.

Nor does § 179 of Cooley's Constitutional Limitations, to the effect that "the legislature may make the title to an act as restrictive as they please," and that "courts cannot enlarge the scope of the title when plainly restrictive," here apply, our holding being simply that a subtitle concerning the application of a statute of limitation as to past assessments is not restrictive of the general title, or of legislation concerning limitation of actions as to future assessments under the general title, and germane to the general subject of the government of cities, unless the intent shall be clear and plain that it shall be construed as restrictive. The legislature has here enacted no legislation under a restrictive title, but instead under a comprehensive title concerning a broad subject. We cannot enlarge the scope of the title under the authority cited by appellants, and above referred to; and it must follow that we certainly cannot do the contrary, narrow its scope. It is a question of the construction to be given, concerning which each title must be construed by itself under general rules, on the main with liberality, but not to the extent of rendering the constitutional provisions nugatory; or, as is said in the comprehensive note to Bobel v. People, 64 Am. St. Rep. 72: "The alleged insufficiency of the title should be tested candidly and justly, and a liberal interpretation given," and that, as also decided by our own court, "in construing the titles of laws, statutes must be held constitutional unless they are clearly void," citing abundant authority.

Appellants have on rehearing urged this statute as unconstitutional on the grounds that "to sustain the special assessment, according to the opinion herein, would be to deprive plaintiffs of their property without due process of law, contrary to the 14th Amendment to the Constitution of the United States, and the plaintiffs claim the protection and benefit of said amendment;" the answer to which is that appellants have had their day in court in an opportunity to object to the

assessment at the time they were by notice cited to appear and offer objections thereto, which hearing so afforded constitutes due process of law in the taking by special assessment of real property for such purposes. Soliah v. Cormack, 17 N. D. 393, 117 N. W. 125, appealed and affirmed in 222 U. S. 522, 56 L. ed. 294, 32 Sup. Ct. Rep. 103, where the Federal Supreme Court there answers finally this question of appellants in the following language: "Neither does that Amendment [speaking of the 14th Amendment] invalidate an act authorizing an appointed board to determine whether the proposed drain will be a public benefit, and to create a drainage district consisting of land which it decides will be benefited by said drain, and to make special assessments accordingly, if, as here, notice is given and an opportunity to be heard afforded the landowner before the assessment becomes a lien against his property."

The judgment is accordingly affirmed.